In the Interest of C.M.W.

JUVENILE OFFICER, Respondent,

v.

P.W., Natural Mother, Appellant.

No. WD 44016.

Missouri Court of Appeals,
Western District.

July 16, 1991.

David W. Whipple, Kansas City, for appellant.

Mary A. Marquez, Suzanne A. Block, Kansas City, for respondent.

Before BERREY, P.J., and ULRICH and BRECKENRIDGE, JJ.

BERREY, Judge.

P.W., the natural mother of C.M.W., appeals from the termination of her parental rights. Affirmed. Appellant presents three points on appeal: (1) the trial court erred in terminating P.W.'s parental rights because the trial court took judicial notice of certain legal files resulting in a denial of due process; (2) the trial court erred in terminating P.W.'s parental rights because the evidence does not support that decision and the trial court did not properly evaluate and make findings as required by § 211.447, RSMo 1986; (3) the trial court erred in considering evidence beyond the scope of the pleadings.

C.M.W. is a female child born on November 26, 1988, to P.W., the natural mother, and A.W., the natural father.[1] P.W.'s rights to C.C., C.M.W.'s older brother, were terminated on November 16, 1989, due to severe acts of physical and sexual abuse perpetrated upon him by A.W. and by P.W.'s uncle, G.H. These acts occurred while C.C. was in P.W.'s custody and with her knowledge.

Shortly before C.M.W.'s birth P.W. went to Florida with A.W. and G.H. She gave birth to C.M.W. in Florida under an assumed name, utilized to escape detection by

---

1. A.W., the natural father executed a waiver of necessity of consent to the future adoption of C.M.W.

various law enforcement agencies. P.W. supported herself and C.M.W. by prostitution. P.W. returned to Kansas City in February of 1989, accompanying A.W. who had been extradited on a charge of rape and who was subsequently incarcerated. C.M.W. was removed from P.W.'s care on February 27, 1989, and placed in protective custody by the DFS.

Counseling services were offered to P.W., but her attendance was sporadic. For example, she was referred to the Children's Place in June, 1989, but refused to attend counseling because of conflicts with her work schedule and because she felt the counseling sessions would be used against her. P.W. was offered the chance to visit C.M.W. weekly and she did so although the record reflects periods of time when she was not in contact with C.M.W. For example, P.W. moved to Anderson, Missouri, in April 1990, to live with one Melvin Van Gunda, the father of her third child. She did not contact John Carter, her caseworker, and inform him she was leaving nor was she able to give him her address when he did confirm the move. A child abuse and neglect check revealed that P.W.'s new lover was allegedly a sexual abuser of children.

At the time of the trial appellant was residing in Arizona with Van Gunda and their child. On several occasions she did not appear at trial, and finally a special setting was arranged to take her testimony by phone. After the hearing, P.W.'s rights to C.M.W. were terminated. From that termination she appeals.

■ Appellant first contends that the trial court took improper judicial notice of certain court files; the legal file of C.M.W. in cause No. JV89–00278 and the legal files of C.C. in cause No. JV88–00575 and TR88–00112. Appellant claims that this was a denial of due process and a denial of her right to cross-examine witnesses since no determination was made by the trial court as to what evidence was taken notice of in these files.

The petition for termination of parental rights filed in the instant case was based upon § 211.447.2, RSMo 1986. That section provides for termination based upon, "[a] severe act or recurrent acts of physical, emotional or sexual abuse toward the child or any child in the family by the parent ... or by another under circumstances that indicate that the parent knew or should have known that such acts were being committed...." § 211.447.2(2)(c). The abuse suffered by C.C., C.M.W.'s brother, at the hands of A.W. and G.H. under circumstances indicating that P.W. knew or should have known about the abuse formed the basis for the complaint.

■ Courts may take judicial notice of their own records in prior proceedings which are between the same parties and are concerned with the same basic facts involving the same general claims for relief. *Hardin v. Hardin,* 512 S.W.2d 851, 854 (Mo.App.1974); *see also Hoekstra v. Jenkins,* 730 S.W.2d 263, 267 (Mo.App. 1987). Courts will not generally take judicial notice of records and facts in one action while deciding another and different one because a party is entitled to have his case decided upon evidence introduced at trial and a reviewing court should not decide a case upon evidence that the party has had no opportunity to refute or explain. *In re Adoption of K.,* 417 S.W.2d 702, 704 (Mo.App.1967). There are exceptions to this rule, however, that look to considerations of expediency and what it is the court is asked to take notice of. *Id.*

In the three prior adjudications P.W. was represented by counsel. She had every opportunity to refute, impeach or explain the evidence against her. The records considered by the trial court were recorded court entries in the preceeding cases involving P.W. Thus, none of the evils associated with letting the court take judicial notice of the three files was present. The cases were all related with the termination of P.W.'s parental rights to C.C. and C.M.W. We also defer to the trial judge's ability to consider only the evidence which is relevant and admissible in deciding the matter absent an abuse of discretion. *M⸺ E⸺ v. M⸺ E⸺ E⸺,* 715 S.W.2d 572, 574 (Mo.App.1986). No such abuse is present here. Appellant's Point I is denied.

■ Appellant next contends that the decision to terminate was not supported by clear, cogent and convincing evidence and that the trial court did not properly evaluate and make findings as mandated by § 211.447, RSMo 1986. Section 211.447.-2(2)(c) allows the court to terminate parental rights where a severe act or recurrent acts of abuse are directed toward "any child in the family" under conditions that "the parent knew or should have known that such acts were being committed...." C.C., the older sibling of C.M.W., had been found to have been abused by A.W. and G.H. C.M.W. was adjudged to be at risk from similar abuse as the conditions giving rise to C.C.'s abuse had not improved.

■ This is a court-tried proceeding. The usual standard of review applies. This court will not upset the order of the trial court unless there is no substantial evidence to support it, it is contrary to the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976). Missouri law clearly allows for the termination of parental rights where a sibling has been abused. *In re Interest of A.L.B.*, 743 S.W.2d 875, 882 (Mo.App.1987). In *In Interest of J.A.J.*, 652 S.W.2d 745, 749 (Mo. App.1983), the court examined a similar situation concluding, "although there was no evidence of any direct physical or emotional harm to J.A.J., III, to require this child to suffer the fate of his siblings prior to termination would be a tragic misapplication of the law."

In the instant case the conditions that lead to the abuse of C.C. had not been remedied by appellant. P.W. fled to Florida with A.W. and G.H. to avoid the law enforcement agencies looking for them. In Florida she resided with both A.W. and G.H., the perpetrators of C.C.'s abuse. C.C.'s abuse was well documented. Clear, cogent and convincing evidence did exist to support the termination.

■ Furthermore, the trial court correctly applied § 211.447.3, RSMo 1986, in making the required findings. Section 211.-447.3, RSMo 1986 provides:

3. When considering whether to terminate the parent-child relationship pursuant to subdivision (1), (2) or (3) of subsection 2 of this section, the court shall evaluate and make findings on the following factors, when appropriate and applicable to the case:

(1) The emotional ties to the birth parent;

(2) The extent to which the parent has maintained regular visitation or other contact with the child;

(3) The extent of payment by the parent for the cost of care and maintenance of the child when financially able to do so including the time that the child is in the custody of the division or other child-placing agency;

(4) Whether additional services would be likely to bring about lasting parental adjustment enabling a return of the child to the parent within an ascertainable period of time;

(5) The parent's disinterest in or lack of commitment to the child;

(6) The conviction of the parent of a felony offense that the court finds is of such a nature that the child will be deprived of a stable home for a period of years; provided, however, that incarceration in and of itself shall not be grounds for termination of parental rights;

(7) Deliberate acts of the parent or acts of another of which the parent knew or should have known that subjects the child to a substantial risk of physical or mental harm.

■ The court need not make findings on all the factors listed above, but only on those it, in its discretion, deems applicable to the case. *In Interest of R.H.S.*, 737 S.W.2d 227 (Mo.App.1987). Review is limited to an abuse of that discretion. *Id.* Our review reveals no abuse of discretion occurred.

The court found that "the child does have some emotional ties to her mother, and thus the mother's failure to obtain the therapy she so needed and her total lack of commitment to this child is especially egregious." The next factor the court may consider is that of visitation or contact with

the child. Although appellant claims that she regularly and consistently maintained contact with the child, the record refutes this contention. Although appellant began by visiting weekly with the child, these visits tapered off to sporadic occurrences. The appellant then moved to Anderson, Missouri, and failed to contact her social worker about her whereabouts. This is also reflected in the court's findings. Finally, in June 1990, appellant moved to Arizona, not even returning to the Kansas City area to appear at the termination hearing.

■ The court found that P.W. "had failed to contribute in a meaningful manner for the cost and maintenance of the child ..." The amount of $128.00 was the sum total of appellant's contributions to the DFS. Appellant tries to excuse such minimal support by pointing out her living expenses and sporadic employment. This provides no justification for the minimal support appellant offered for C.M.W. *See In Interest of R.E.C.*, 716 S.W.2d 879, 884 (Mo.App.1986).

The next factor listed in § 211.447.3 is whether additional services would bring about lasting parental adjustment. The court found that P.W. had not participated in the treatment and services offered by the DFS and that additional services would be to no avail. This finding is amply supported by appellant's behavior. Although appellant argues that her circumstances had changed, appellant's patterns of behavior belie this assertion. Appellant's new boyfriend was a subject of a DFS investigation resulting in a finding of a reason to suspect sexual abuse. P.W. repeatedly failed to attend the numerous counseling services made available to her. It is up to parents to make a commitment for change in order to rectify conditions preventing return of their children. *T.S. v. P.S.*, 797 S.W.2d 837, 843 (Mo.App.1990). Appellant does not demonstrate commitment. Indeed, she was not even committed enough to show up at trial. Her claimed change of circumstances ignores her past behavior. "Although no one can predict the future with total accuracy, patterns in the past

provide vital clues to the present and future." *In Interest of M.L.W.*, 788 S.W.2d 759, 762 (Mo.App.1990).

The court is next asked to examine the parent's disinterest or lack of commitment to the child. The court made a finding delineating the circumstances that show P.W.'s lack of commitment to C.M.W. These include mother's failure to appear in court, her leaving the Kansas City area without contacting her social worker, her move to Arizona and her association with a man alleged to have committed acts of sexual abuse on a child. All of these instances are supported in the record and the trial court's finding reveals no abuse of discretion. In short, the evidence amply supports the findings by the trial court, findings which were complete and spoke eloquently of C.M.W.'s plight. Appellant's Point II is denied.

■ Appellant finally contends that the trial court erred in considering evidence of her trip to Florida as such was beyond the scope of the pleadings. Although appellant presents this point naked of supporting authority we nonetheless note that the evidence was relevant on the issue of whether the termination was in the best interest of the child. Even assuming that the evidence was erroneously admitted, it is nearly impossible in a court-tried case to predicate reversal on the erroneous admission of evidence. *M__ E__ v. M__ E__ E__*, 715 S.W.2d 572 (Mo.App.1986). Deference is given the judge's ability to consider that evidence which is relevant and admissible. *Id.* Appellant's Point III is denied. The judgment of the trial court is affirmed.

All concur.