62 S.W.3d 600 (2001)
In the Interest of P.C., B.M., and C.M.
Nos. WD 60031, WD 60032, WD 60033.
Missouri Court of Appeals, Western District.
December 4, 2001.
*601 Mitzi J. Alspaugh, Kansas City, for appellant.
David Andrew Baird, Maryville, for respondent.
PAUL M. SPINDEN, Chief Judge.
D.M. challenges the circuit court's judgment terminating her rights to parent her three children. She asserts that the state did not establish grounds for terminating her parental rights by clear, cogent and convincing evidence. We agree and reverse the circuit court's judgment.
Authorities at the Division of Family Services took protective custody of D.M.'s children on February 22, 2000, when her 10-month-old infant, C.M., suffered first and second degree burns on the lower half of her body. D.M. had left the infant in the bathtub to go to her kitchen. Apparently, in D.M.'s absence, one of her other childrenages two and fiveturned on hot water in the bathtub. On April 5, 2000, the circuit court assumed jurisdiction of the children, finding that D.M. had not properly supervised her children and had neglected them. The circuit court placed them in DFS' custody.
*602 DFS asked D.M. to participate in various programs designed to teach parenting skills and to submit to counseling to help her manage her anger. D.M. completed a parenting skills class, but she did not cooperate with a parent aide who sought to help her interact with her children during visitations with them. D.M. declined counseling during the first eight months that she was in the program but began receiving counseling in January 2001. During the 14 months that her children were in DFS' custody, D.M. moved six times, at times living with men who had been convicted of crimes, including drug usage. D.M. submitted to an evaluation of her drug and alcohol use at the Family Guidance Center in St. Joseph, but she did not participate in the outpatient program recommended by the center. She inquired about an inpatient program but did not follow through.
DFS arranged for D.M. to visit her children three times a week. Two of the visits were at D.M.'s residence and supervised by DFS. The third visit each week was at a site other than her residence and was to be at a time to be scheduled by D.M. After about four or five months, except for one time, D.M. did not show up for any visitations when she was required to go to where the children were, rather than having DFS take the children to her residence. D.M. told DFS that she had no means of transportation to get to the children, but DFS indicated that it could not accommodate her requests to move the "nonhome" visitations to weekends or to the hours that she requested. DFS asked D.M. to participate in a vocational rehabilitation program in St. Joseph, but she did not, claiming transportation problems. At the time of the hearing in this case, she had not been employed for six months.
In August 2000, six months after taking custody of the children, DFS petitioned the circuit court to terminate D.M.'s parental rights under § 211.447.4.[1] Eight months later, after a two-day evidentiary hearing in April 2001, the circuit court ordered termination of D.M.'s parental rights stating that clear, cogent and convincing evidence existed according to §§ 211.447.4(2)(c), 211.447.4(2)(d), and 211.447.4(6) for abuse or neglect and unfitness to be a party to the parent-child relationship.
In reviewing the circuit court's judgment, we consider whether it was supported by clear, cogent, and convincing evidence that established grounds for termination under § 211.447 with consideration of the children's best interests. Section 211.447.5. In making its decision, the circuit court was obligated to maintain a preference for retaining D.M.'s parental rights. In the Interest of D.G.N., Jr., 691 S.W.2d 909, 912 (Mo. banc 1985). Clear, cogent, and convincing evidence "`instantly tilts the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true."' In re Adoption of W.B.L., 681 S.W.2d 452, 454 (Mo. banc 1984) (citation omitted).
We review the facts in the light most favorable to the circuit court's order. In the Interest of M.E.W., 729 S.W.2d 194, 196 (Mo. banc 1987). We defer to the circuit court's judgment in matters of credibility. D.G.N., Jr., 691 S.W.2d at 912. The state's burden was to establish only one ground under § 211.447 to support termination of parental rights. M.E.W., 729 S.W.2d at 197.
"[T]erminating parental rights is an exercise of an awesome power and *603 should not be done lightly." In the Interest of T.H., 980 S.W.2d 608, 613 (Mo.App. 1998). It is "a drastic intrusion into the sacred parent-child relationship." Jonathan H. v. Margaret H., 771 S.W.2d 111, 114 (Mo.App.1989). Because termination of parental rights interferes with a fundamental, basic liberty, freedom from governmental interference with family relationships and child rearingsee M.L.B. v. S.L.J., 519 U.S. 102, 116-117, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996); Herndon v. Tuhey, 857 S.W.2d 203, 207 (Mo. banc 1993)we review the circuit court's findings of fact and conclusions of law closely.
The first ground for termination asserted by the circuit court was emotional abuse under § 211.447.4(2)(c) for "[a] severe act or recurrent acts of ... emotional... abuse toward ... any child in the family by the parent[.]" The circuit court said in its finding of facts:
It is found ... that [D.M.'s children] have been subjected to recurrent acts of emotional abuse during periods of visitation, including, but not limited to, that the mother repeatedly threatened to spank the children, asked the children if they "wanted their butts whipped," threw the children's toys in the trash, ignored the children during visitation and instead watched television and talked to others either in person or by phone, yelled at her children using profanity, failed to exercise all visitations that were available to her, chased her children in anger, failed to visit the children for portions of December during the Christmas holiday and in general has acted inappropriately with the children since the mid-part of November, 2000.
Threatening to spank a child does not constitute an act of emotional abuse. The General Assembly, in defining child abuse in § 210.110, excluded, from what constitutes emotional abuse, spankings that are "administered in a reasonable manner." The circuit court, therefore, wrongfully factored threats of spanking into its consideration.
As to the other acts, the circuit court heard no evidence of what impact the mother's acts had on the children. We have previously said:
[T]here is no statutory definition of emotional abuse, but emotional abuse has ties to mental abuse. Missouri has long realized that mental deficiencies, problems or abuse may be established by the fact testimony of even lay witnesses describing the actions of the affected party. Barnes v. Marshall, 467 S.W.2d 70 (Mo.1971). Additionally, emotional abuse may be established by the expert testimony of a doctor or licensed psychologist, who by definition would deal in the diagnosis of emotional disorder or disability. §§ 337.015(3), 495.065 RSMo, (1986).
Nowhere in the record was any evidence presented to the trial court concerning any symptoms or diagnosis of emotional abuse. The trial court simply had no evidence ... on which to base its finding that contact between Appellant and the child had caused emotional abuse, or that continued contact would cause continued emotional abuse. The court is under an obligation to base its decision on the evidence presented at trial.... Here, not only was there no testimony of witness observation, but the court also had no available expert testimony upon which to base its decision.
Reller v. Hamline, 895 S.W.2d 659, 662-63 (Mo.App.1995). The same is true in this case.
D.M.'s acts may have been improper disciplinary techniques in that she allowed anger to shape her discipline, but *604 under a clear, cogent, and convincing standardthe circuit court should have demanded more detailed evidence of what was said and done and its impact on the children. It heard no evidence, from a lay or expert witness, as to what impact D.M.'s disciplinary tactics had on her children and was left to speculate what difficulties or problems, if any, D.M.'s conduct caused for the children.
We are not deciding that the circuit court must hear expert testimony in every case of alleged emotional abuse, but we are deciding that it must hear some evidence describing what impact the questioned conduct has had on the children. In the absence of such evidence, we do not believe that the General Assembly intended for a parent's raising her voice in disciplining her children, or her throwing toys in the trash to end a fight over them, or her spending visitation time to watch television or to talk on the telephone to constitute, in and of themselves, emotional abuse. Such acts may have been an exercise of bad judgment, but they do not, in and of themselves, constitute emotional abuse.
The incident in which D.M. decided to allow personal plans during the Christmas season to keep her from being with her children during a time so significant to family relationships is quite troubling. We agree with the circuit court that this was "inappropriate," if not an act of emotional abuse, but it was a single, not a recurrent act, and was not severe enough to constitute grounds in and of itself to support termination of parental rights. Hence, we discern no evidentiary basis for the circuit court's conclusion that the state had established a ground for terminating D.M.'s right to parent her children under § 211.447.4(2)(c).
The circuit court's second ground for terminating D.M.'s parental rights was D.M.'s failure to provide financial support for her children. In § 211.447.4(2)(d), the General Assembly has authorized termination of parental rights for "[r]epeated or continuous failure by the parent, although physically or financially able, to provide the child with adequate food, clothing, shelter, or education as defined by law, or other care and control necessary for the child's physical, mental, or emotional health and development." The circuit court found:
The mother did fail to meet the legal obligation to provide adequate food and shelter to the minor children throughout that time period. The mother had the physical ability and demonstrated an ability to become employed and earn an income, but since October 2000 has been unemployed. The mother was quoted as stating that she would not work for less than $13.00 per hour. There was not a specific order entered by this court which would have required the mother to provide for the food, clothing and shelter of the children, but that did not prohibit her from paying for her children's support and maintenance or remove that responsibility.
DFS acknowledged that D.M. was providing adequately for the children when it, with the circuit court's approval, removed the children from D.M.'s custody in February 2000. D.M. was not under a court order to provide financial support from March 2000 to April 2001, and no demands were made on her for money.
D.M.'s evidence of her "past conduct" was that, before the children were removed from her custody, she worked regularly to support her children and that she regularly took her children to their nurse when they were ill or needed check-ups. The nurse stated there were no signs of abuse or neglect or that the children were not being properly fed. The nurse also stated that D.M. followed his instructions *605 as well as she could; would often drop by the office to ask questions; and that the medical bills were paid for by Medicaid.
While parents must provide support for their children even when they are in DFS' custody and even if DFS has made no demand that the parent fulfill this duty, In the Interest of S.C., 914 S.W.2d 408, 412 (Mo.App.1996), when DFS makes no demand for financial support, a reasonable person could believe that financial assistance was unnecessary, especially in times of unemployment. Of more importance, the circuit court was obligated to consider D.M.'s past parental conduct. In the Interest of J.N.C., 913 S.W.2d 376, 380 (Mo.App.1996) "`To allow only [a] review of very recent events is both short sighted and dangerous.'" In the Interest of J.M.L., 917 S.W.2d 193, 196 (Mo.App.1996) (quoting In the Interest of M.L.W., 788 S.W.2d 759, 762 (Mo.App.1990)). "All grounds for termination must to some extent look to past conduct because the past provides vital clues to present and future conduct." In the Interest of T.E., 35 S.W.3d 497, 504 (Mo.App.2001). The circuit court did not indicate that it had considered at all D.M.'s provision of support for her children before February 2000. We conclude that this record does not support the circuit court's finding of failure to provide adequate support.
The third ground on which the circuit court relied in terminating D.M.'s parental rights was § 211.447.4(6), which states that parental rights may be terminated when the circuit court determines:
The parent is unfit to be a party to the parent and child relationship because of a consistent pattern of committing a specific abuse, including but not limited to, abuses as defined in section 455.010, RSMo, child abuse or drug abuse before the child or of specific conditions directly relating to the parent and child relationship either of which are determined by the court to be of a duration or nature that renders the parent unable, for the reasonably foreseeable future, to care appropriately for the ongoing physical, mental or emotional needs of the child.
In concluding that D.M.'s parental rights should be terminated under § 211.447.4(6), the circuit court said, "[D.M.] has demonstrated that she is an unfit party to the parent/child relationship because of her failure to parent, interact and communicate with the children[.]" The instances listed by the court were D.M.'s not participating adequately in DFS' various counseling programs, her not maintaining "a safe and clean house" by virtue of her moving frequently and not using the services of DFS' parent aide, her not using consistently DFS' recommended disciplinary techniques, her not maintaining employment or enrolling in vocational training, her not exercising all of her visitation opportunities with her children, her permitting family members and others to be present during visitation, and her ignoring her children at times during visitation.
Even assuming that this conduct was what the General Assembly deemed to be "specific abuse"and we are not certain that it isthe circuit court did not make a finding that this conduct was of a duration and nature that it rendered D.M. unable, "for the reasonably foreseeable future," to care for her children. The only finding by the circuit court concerning D.M.'s future ability to care for her children was its noting a counselor's testimony that a counseling program for anger management would take two to three years to be effective. Assuming that the circuit court reported this testimony because it believed it to be true, the circuit court made no finding that this was unreasonable. In all other instances, the circuit court did not *606 address whether D.M.'s shortcomings were such that she would be unable for the reasonably foreseeable future to care for her children.
The General Assembly has mandated in § 211.447.4(6) that abuse alone cannot be a basis for terminating parental rights. The legislature has added the requirement that the abuse must be of such a duration and nature that the circuit court determines that it renders the parent unfit for the reasonably foreseeable future to provide for her children.
Everyone involved acknowledged that D.M. remained interested in her children and that a love bond continued between them. Indeed, the guardian ad litem recommended against termination of parental rights. She argued:
[T]here was clear findings [by the circuit court] of bonding between the mother and the three children. Testimony supported that there was a stable home life for the children prior to the incident giving rise to the division's involvement. It wasn't until the children were removed from her home that the characteristic of instability in her housing situation arose. Further, she had stable employment until the children were removed from her car, custody and control. There was no evidence of a drug problem[,] and the court held that any chemical dependency which the mother might have did not prevent her from providing proper care to her children.
....
... [T]he evidence does show that mother clearly was a dutiful participant in the parent/child relationship until the accident that led to the state's involvement. Once the children were removed from her home, she encountered difficulties meeting the standard imposed by the division on her to have the children returned to her. The more roadblocks she encountered, the more frustrated it appears she became. And the more frustrated with the system she became, the less willing she was to participate in the plan to have the children returned to her.
The record suggests that D.M. may well be able to correct the shortcomings noted by the circuit court. In light of this and the standard of review in these cases, we conclude that, under this record, the circuit court erred in basing termination on § 211.447.4(6).
We, therefore, reverse the circuit court's judgment.
EDWIN H. SMITH, Judge, and WILLIAM E. TURNAGE, Senior Judge, concur.
NOTES
[1] All statutory references refer to the 2000 revised statutes.