**In the Interest of A.A.T.N.**

**No. ED 85697.**

Missouri Court of Appeals,
Eastern District,
Division One.

Nov. 1, 2005.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 7, 2005.

Application for Transfer Denied
Jan. 31, 2006.

Mary D. Fox, University City, MO, for appellant.

Kathryn L. Pierce, St. Louis, for Guardian Ad Litem.

Karen A. Siegel, St. Louis, MO, for respondent.

PATRICIA L. COHEN, Judge.

### Introduction

Ahn Nguyen ("Father") appeals from a judgment of the Circuit Court of the City of St. Louis terminating his parental rights to his daughter, A.A.T.N.[1] Father contends that the trial court erred in terminating his parental rights because: (1) the record is insufficient to support the trial court's findings under Section 211.447.4(2),(3), and (6) RSMo.2000;[2] and (2) the trial court failed to address all relevant statutory factors set forth in 211.447.4(2) and (3); and (3) the trial court failed to address the "best interest" factors set forth in Section 211.447.6. We affirm.

### Statement of the Facts and Proceedings Below

Viewed in the light most favorable to the trial court's decision, the facts are as follows. Four-year-old A.A.T.N. and her six-year-old sister, Annabelle, lived with Father and My Nguyen ("Mother").[3] On April 17, 2003, Dr. Griffiths–Williams examined A.A.T.N. and Annabelle at St. Louis Children's Hospital. During the examination, Dr. Griffiths–Williams found multiple lesions on Annabelle's legs, arms, back, the back of her neck and left knee as well as bruising on her left foot. She found similar lesions on A.A.T.N. In total, Dr. Griffiths–Williams found approximately thirty lesions on Annabelle and fourteen lesions on A.A.T.N. The lesions appeared

---

1. The trial court also terminated A.A.T.N.'s mother's parental rights. The termination of A.A.T.N.'s mother's parental rights is not at issue here.

2. All further statutory references are to RSMo (2000) unless otherwise noted.

3. Father is not Annabelle's biological parent and has no parental rights to her.

to be inflicted at different times, the most recent within thirty days of the hospital visit, and were not self-inflicted or accidental.

Suspecting abuse, the Missouri Department of Social Services, Children's Division ("Children's Division") took A.A.T.N. and Annabelle into care on April 18, 2003. The trial court held a jurisdictional hearing, and thereafter issued an order ("Jurisdictional Order"), determining that Father abused A.A.T.N and her sister and continuing the Children's Division's custody of the children. More specifically, the trial court determined that Father held a lighter to Annabelle's left knee, punctured her legs, arms and the back of the neck with a fork and hit her. The trial court also found that Mother knew or should have known of Father's abuse, but that Mother failed to protect both A.A.T.N. and Annabelle from Father. The trial court concluded that Father and Mother were not appropriate custodians for A.A.T.N. and Annabelle because, while in Father's and Mother's custody, the children were at risk of harm or neglect. Additionally, the trial court ordered Father to obtain employment and appropriate housing, initiate semi-monthly visitation with A.A.T.N., engage in parenting skills training and family violence counseling and pay child support.

On November 13, 2003, the trial court held a hearing to review Father's progress under the terms of the Jurisdictional Order. Following the hearing, the trial court determined that Father had partially complied with the Jurisdictional Order.

On April 14, 2004, the trial court held a permanency hearing. The children's therapist, Lanie Holzman, and their caseworker, Angela Hager, testified and recommended termination of Father's and Mother's parental rights. Kenneth Woods, a licensed clinical social worker and Father's therapist, also testified. Mr. Woods noted that although Father "must accept responsibility for what he did," Father continued to deny causing the children's injuries and offered no other explanation for their injuries. When discussing Father's denial of accountability, Mr. Woods admitted that Father's attitude was a "concern." The trial court also again reviewed Father's compliance with the Jurisdictional Order and concluded that Father failed to eliminate the conditions that caused the children's removal from the home. At the conclusion of the hearing, the trial court issued an order recommending the termination of Father's and Mother's parental rights.

The Juvenile Officer filed a Petition to Terminate Parental Rights against Father and Mother, and the trial court held a dispositional hearing on October 18 and 20, 2004. The Juvenile Officer presented the testimony of Ms. Holzman and Ms. Hager, both of whom testified that termination was in the best interests of the children.

Ms. Holzman, the children's therapist, based her recommendation on several factors. As an initial matter, Ms. Holzman, found A.A.T.N.'s account of the abuse credible. Moreover, Ms. Holzman believed Father would hurt A.A.T.N. if she returned home and Mother would be unable to protect A.A.T.N. from him. Furthermore, she explained that Father would not be able to participate in therapy with A.A.T.N. because he did not acknowledge his abuse. In addition, she testified that A.A.T.N. did not want to live with Father and that A.A.T.N. continued to fear him. She warned that the "threat of potential unsafety" would traumatize A.A.T.N. if she returned home. Finally, she predicted that the conditions which caused A.A.T.N.'s removal from the home would not change in the future.

Ms. Hager, the children's caseworker, echoed the testimony of Ms. Holzman.

Ms. Hager concluded that, if the children returned home, Father would have access to the children and Mother would be unable to protect them. She noted that Mother desired to be with Father and spent nights with him at his residence. Ms. Hager repeated Annabelle's account of Father's abuse, including that Father held her down and burned her with a lighter on her knee and, on a separate occasion, burned her with a fork. Likewise, Ms. Hager disclosed A.A.T.N.'s report that Father hit and kicked her and stabbed her with a fork. Ms. Hager also described A.A.T.N. as "distant" during her visits with Father. Finally, Ms. Hager stated that A.A.T.N. did not want to live with Father because she feared he would hurt her.

The Juvenile Officer also presented the testimony of Jennifer Evans, a Family Court staff psychologist. Ms. Evans testified about her interactions with Mother and stated that A.A.T.N. risked developing "emotional problems" if she was returned to Father and Mother because there was a "potentially abusive" situation in the home.

In addition to live witness testimony, the Juvenile Officer proffered the Children's Division case file, Ms. Holzman's summary therapy reports and the Children's Division's Termination of Parental Rights referral forms for A.A.T.N. Ms. Holzman's summary therapy reports recounted A.A.T.N.'s and Annabelle's statements regarding Father's abuse. Likewise, the Termination of Parental Rights referral form detailed Father's abuse of A.A.T.N. and Annabelle. In addition to the reports and forms, the trial court took judicial notice of the pleadings and the files in A.A.T.N. and Annabelle's underlying cases. The files from the underlying cases contained, *inter alia,* the orders from the jurisdictional and permanency hearings.

In support of his position, at trial Father stated that he never abused his daughters and had complied with the trial court's order. In addition, he called Mary Conner, an employee of the Division of Child Support Enforcement, to explain why he failed to support A.A.T.N. Conner testified that the Division of Child Support Enforcement could not issue a child support order until paternity was established, and although Father submitted to a paternity test, the State never presented A.A.T.N. for the test. Nevertheless, she also stated that Father could have obtained a child support order without a paternity test by presenting an order of the trial court finding him to be A.A.T.N.'s father. The trial court also heard the testimony of Mother who claimed that Father could not have abused the children and the marks on the girls were from allergies.

Following the hearing, the trial court entered judgment terminating Father's and Mother's parental rights. Father appeals.

### Standard of Review

Our review of a trial court's decision to terminate parental rights is governed by *Murphy v. Carron,* 536 S.W.2d 30 (Mo.banc 1976). We affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or the trial court erroneously declared or applied the law. *In the Interest of B.L.H.,* 158 S.W.3d 269, 277 (Mo.App. E.D.2005). We view the facts in the light most favorable to the trial court's decision and defer to the trial court's superior ability to determine the credibility of witnesses. *In the Interest of E.D.H.,* 138 S.W.3d 761, 764 (Mo.App. E.D.2004).

Section 211.447 sets out statutory grounds for the termination of parental rights and permits termination only when

it is in the best interest of the child and the statutory grounds for termination are supported by "clear, cogent and convincing evidence." See *In the Interest of S.M.H.*, 160 S.W.3d 355, 362 (Mo. banc 2005). Evidence which is clear, cogent, and convincing instantly tilts the scales in favor of termination when weighed against the evidence in opposition and leaves the fact finder with an abiding conviction that the evidence is true. *Id.* Such evidence may be found despite the presence of contrary evidence. *In the Interest of D.C., A.C.*, 49 S.W.3d 694, 698 (Mo.App. E.D.2001).

 After finding the existence of one or more of the statutory grounds, the trial court must consider whether termination is in the best interest of the child. *In the Interest of P.L.O. and S.K.O.*, 131 S.W.3d 782, 789 (Mo. banc 2004). The determination of what is in a child's best interests is a subjective assessment based on the totality of the circumstances. *B.L.H.* 158 S.W.3d at 282. We review a best interest determination for abuse of discretion. *Id.*

### Discussion

#### A. Section 211.447.4(3)-Failure to Rectify

 In his first point, Father contends that the record contains insufficient competent evidence to terminate parental rights under Section 211.447.4(3). More specifically, Father argues that evidence used by the trial court was not competent evidence because the trial court erred in taking judicial notice of the permanency order and using findings therein to support termination. Father further contends that the trial court failed to address all factors set forth in Section 211.447.4(3).

 Termination under Section 211.447.4(3) is "based on a determination that conditions of a potentially harmful nature continued to exist as of the termi-

nation, rather than a mere finding that conditions that led to the assumption of jurisdiction still persisted." *B.L.H.*, 158 S.W.3d at 278. To make this determination, the trial court must consider: (a) the terms of the social service plan and the extent to which the parties have made progress in complying with those terms; (b) the success or failure of the Children's Division or the juvenile officer to aid the parent to provide a proper home for the child; (c) a mental condition which renders the parent unable to knowingly provide the child with the necessary care, custody or control; and (d) chemical dependency. See *Id.*; see also, *In the Interest of E.T.C.*, 141 S.W.3d 39, 47 (Mo.App. E.D.2004).

In this case, the trial court found that the conditions that caused the court to assume jurisdiction, or conditions of a potentially harmful nature, continued to exist and would not be remedied at an early date to permit A.A.T.N.'s return to Father's custody in the near future. Further, the trial court found that the Children's Division was unsuccessful in its efforts to assist Father in adjusting his circumstances to provide a proper home for A.A.T.N. In that regard, the court noted that Father refused to accept responsibility for the minor children's injuries. The court also found that Father did not fully comply with the Jurisdictional Order, as he paid no support for A.A.T.N.

The record supports the trial court's determination that conditions of a potentially harmful nature still existed. First, Ms. Holzman, A.A.T.N.'s therapist, testified that A.A.T.N. feared Father. She offered compelling testimony that A.A.T.N. believed Father would hurt her if she returned to his care. Ms. Hager, A.A.T.N.'s caseworker, described A.A.T.N. as "distant" during visits with him and stated that A.A.T.N. did not want to live with

Father because she feared further abuse. Moreover, Ms. Holzman believed that A.A.T.N. risked being traumatized if she was returned to Father. Similarly, Ms. Evans, A.A.T.N.'s juvenile officer, explained that A.A.T.N. risked emotional problems if she was returned to Father's care because of the "potentially abusive" situation.

More significantly, the record also reveals that Father failed to acknowledge that he abused the children. At trial, Ms. Holzman explained that Father's failure to acknowledge the abuse precluded him from participating in therapy with A.A.T.N. Furthermore, Father's therapist also expressed concern about Father's failure to acknowledge his abuse, noting that Father needed to accept responsibility for his actions. Finally, Ms. Holzman predicted that the conditions would not change in the future to allow A.A.T.N. to be returned to Father's care.

As part of his first point, Father also argues that the trial court erred when it took judicial notice of A.A.T.N.'s court file and Annabelle's court file. As a general rule, a trial court may take judicial notice of its own records in prior proceedings between the same parties where the same basic facts are at issue. *Feinberg v. Feinberg*, 924 S.W.2d 328, 330 (Mo.App. E.D.1996).

The Western District's decision in *In the Interest of C.M.W.*, 813 S.W.2d 331 (Mo. App. W.D.1991) is instructive. In *C.M.W.*, the appellant argued that the trial court erred when it took judicial notice of separate legal files involving the child at issue and her brother. *C.M.W.*, 813 S.W.2d at 333. Affirming the trial court, the Western District noted that the appellant had counsel in the prior proceedings and, thus, had an opportunity to refute, impeach or explain evidence that was presented against her. *Id.* Consequently, it held that

the trial court did not err in taking judicial notice of, and relying on, the files generated in the earlier proceedings. *Id.*

Here, as in *C.M.W.*, all the hearings were between the same parties and concerned the same basic facts. See *C.M.W.*, 813 S.W.2d at 333. Moreover, Father had the same counsel throughout the process and had a full opportunity to refute, impeach and explain the evidence presented against him. See *C.M.W.*, 813 S.W.2d at 333. Accordingly, the trial court did not err in taking judicial notice of either A.A.T.N.'s or Annabelle's file.

In addition to challenging the sufficiency of the evidence, Father contends that the trial court failed to consider and make a finding with respect to each statutory subsection under Section 211.447.4(3), as required. See *E.T.C.*, 141 S.W.3d at 48. In reviewing such a contention, we consider whether the trial court's findings are sufficiently specific to permit us to determine whether the trial court properly considered each factor. *In the Interest of C.F.C.*, 156 S.W.3d 422, 427 (Mo.App. E.D.2005).

Father concedes that the trial court made specific findings required by Section 211.447.4(3)(a). Specifically, the trial court found that Father partially complied with the Jurisdictional Order; he was employed, obtained appropriate housing, completed parenting classes and maintained visitation with A.A.T.N. The trial court also made specific findings in accordance with Section 211.447.4(3)(b), concluding that the Children's Division was unsuccessful in assisting Father to adjust his circumstances in order to provide a proper home for A.A.T.N.

However, the trial court made no specific findings in its discussion of Section 211.447.4(3) in reference to subsections (c), relating to mental conditions, and (d), con-

cerning chemical dependency, but instead stated at the end of its order, "[t]he Court has considered all subsections of 211.447.4 R.S.Mo. and Section 211.447.6 R.S.Mo. and, except as expressly provided herein, finds the subsections irrelevant because no evidence of their applicability was presented." While it may be a better practice to make specific findings as to each individual subsection, see *E.T.C.*, 141 S.W.3d at 48, we have reviewed the record and it does not appear that Father's mental condition or chemical dependency were issues in the case. Thus, the trial court's findings regarding the Section 211.447.4(3) factors are sufficient to assure us that the trial court considered all relevant subsections and evidence presented as is required by *C.F.C.* 156 S.W.3d at 427. Point denied.

### B. Section 211.447.4(2)-Abuse and Neglect

██ In his second point, Father argues that the record contains insufficient competent evidence of severe or recurrent acts of physical, emotional or sexual abuse to support termination under Section 211.447.4(2). More specifically, Father contends that the record does not contain evidence of abuse because the trial court relied on A.A.T.N.'s and Annabelle's court files and testimony from Ms. Holzman and Ms. Hager which contained hearsay accounts of A.A.T.N.'s and Annabelle's abuse.[4] Father also argues that the trial court failed to address all relevant statutory factors set forth in Section 211.447.4(2).

The trial court found that Father committed severe and recurrent acts of physical, emotional and sexual abuse toward A.A.T.N. and Annabelle. More specifically, the court found that Father hit and

punctured A.A.T.N. and Annabelle with a fork and held a lighter to Annabelle's knee. The court also found that the puncture wounds were created over a period of time because they were in various stages of healing. We agree with Father that there is insufficient evidence to support findings of sexual abuse. However, the record contains substantial evidence that Father repeatedly physically abused A.A.T.N. and Annabelle and that they suffered emotional consequences as a result of that abuse. See *In the Interest of C.F.C.*, 156 S.W.3d 422, 427 (Mo.App.E.D.2005) (stating proof of any one factor sufficient to terminate parental rights).

The record is replete with evidence that Father abused A.A.T.N. and Annabelle. Dr. Griffiths–Williams observed multiple lesions on A.A.T.N. and Annabelle and determined after examination that the lesions were not self-inflicted or accidental. Furthermore, both the children's therapist and caseworker opined that Father abused the children. The therapist also concluded that Father would abuse A.A.T.N. again if she returned to his care.

Likewise, the record also establishes that the children suffered repeated abuse. The lesions found on A.A.T.N. and Annabelle were in various stages of healing. Dr. Griffiths–Williams determined that the lesions were produced over a period of time. Thus, the record supports the inference that the lesions were not created during a single episode, but that Father repeatedly abused A.A.T.N. and Annabelle.

██ Father also contends that the trial court erred in admitting A.A.T.N.'s and Annabelle's accounts of abuse as related to

---

4. We will not address again Father's argument regarding judicial notice, because as discussed above, a trial court may take judicial notice of its own records in prior pro-

ceedings between the same parties when the same basic facts are at issue. *C.M.W.*, 813 S.W.2d at 333.

Ms. Holzman and Ms. Hager. We conclude, as did the trial court, that the children's accounts of abuse were admissible under the hearsay exception articulated in *In re Marriage of P.K.A.*, 725 S.W.2d 78 (Mo.App. S.D.1987).

In *P.K.A.*, the Southern District held that a trial court is permitted to admit a child's statement indicating sexual abuse where the best interest of the child is the "primary concern." *P.K.A.*, 725 S.W.2d at 81. See also *State v. Bell*, 950 S.W.2d 482 (Mo.1997); *D.L.H. v. H.T.H.*, 780 S.W.2d 104 (Mo.App. E.D.1989); *In the Interest of S.M.*, 750 S.W.2d 650, 654 (Mo.App. E.D. 1988). The Southern District noted that allowing hearsay statements may be preferable to forcing a child to testify, especially when the abuser is the child's parent. *P.K.A.*, 725 S.W.2d at 81.

Father argues that the *P.K.A.* hearsay exception should be limited to cases of sexual abuse, and should not apply in cases of physical or emotional abuse. It appears that we have not addressed whether the *P.K.A.* exception should apply in cases involving non-sexual child abuse. However, in *Hord v. Morgan*, the Western District considered whether the *P.K.A.* exception can be utilized where there are allegations of non-sexual child abuse. *Hord*, 769 S.W.2d 443, 447 (Mo.App. W.D. 1989). Concluding that the purpose of the *P.K.A.* exception was to prevent child abuse and the trauma that a child may experience through testifying, the Western District determined that limiting the exception to sexual abuse cases would be inconsistent with that rationale. *Id.* We agree with the Western District and would permit a hearsay exception where, as here, a child reports to others physical or emotional abuse. As the Western District stated: "The goal of the exception is to prevent *child abuse* and to attempt to alleviate the consequent trauma that a child may experience through testifying." *Hord*, 769 S.W.2d at 447 (emphasis in original).

In any event, even if the children's statements were inadmissible hearsay, under the circumstances presented here, we are not required to reverse. Admission of evidence that is allegedly hearsay is only reversible error if the challenged evidence prejudiced the complaining party. See *Conoyer v. Conoyer*, 695 S.W.2d 480, 482 (Mo.App. E.D.1985). A complaining party is not prejudiced if the evidence is merely cumulative to other admitted evidence. *Id.* This record contains considerable evidence in addition to the children's statements demonstrating that Father abused A.A.T.N. and Annabelle, and accordingly, the children's statements to Ms. Holzman and Ms. Hager were not prejudicial.

In his second point, Father also contends that the trial court did not make findings on all four statutory factors enumerated in Section 211.447.4(2). As we discussed above, the trial court's findings regarding subsections (a), referring to mental condition, and (b), referring to chemical dependency, are sufficient under the statute. See *C.F.C.*, 156 S.W.3d at 427. With respect to Subsection (c), Father appears to acknowledge that the trial court found severe and recurrent acts of abuse. Finally, although the trial court did not specifically address Subsection (d) in its discussion of Section 211.447.4(2), it did consider support issues in discussions of other sections. Scattered throughout the trial court's written findings and conclusions, the trial court determined that Father brought food and clothing to the meetings, obtained adequate housing, did not pay monetary support and was never issued a support order. Point denied.

### C. Section 211.447.4(6)-Unfit Parent

██ In his third point, Father contends that the record contains insufficient evidence that Father is an unfit parent and unable to appropriately care for A.A.T.N. for the foreseeable future as required by Section 211.447.4(6).

██ Termination is permitted under Section 211.447.4(6) if, *inter alia,*: (1) the "parent is unfit to be a party to the parent and child relationship because of a consistent pattern of committing a specific abuse" and (2) the parental unfitness is "of a duration or nature that renders the parent unable, for the reasonably foreseeable future, to care appropriately for the ongoing physical, mental or emotional needs of the child." *In the Interest of C.W.,* 64 S.W.3d 321 (Mo.App. W.D.2001). Past abuse alone is not a proper basis for terminating parental rights under Section 211.447.4(6). See *In the Interest of P.C.,* 62 S.W.3d 600, 605 (Mo.App.W.D.2001). However, a trial court may consider a parent's past conduct because it provides vital clues to the present and future. *Id.*

Here, there is sufficient evidence to support the trial court's finding of a consistent pattern of committing specific abuse. The record clearly reflects that Father abused A.A.T.N. by hitting and stabbing her with a fork. Because A.A.T.N.'s lesions were in various stages of healing, Dr. Griffiths–Williams determined that they were inflicted over a period of time.

The trial court's finding that Father will be unable to care appropriately for A.A.T.N. in the future is also supported by the record. Ms. Holzman testified that A.A.T.N. did not want to live with Father and A.A.T.N. continued to fear him. Ms. Holzman also explained that Father would not be able to participate in therapy with A.A.T.N. and predicted that the conditions which caused A.A.T.N.'s removal from Father's care would not change in the future.

Similarly, Ms. Hager testified that, if A.A.T.N. returned home, Father would have access to her and Mother would not be able to protect A.A.T.N. from him. In light of the foregoing, the trial court's finding that Father will not be able to care for A.A.T.N. in the reasonably foreseeable future was supported by the evidence. See *In the Interest of K.A.W.* 133 S.W.3d 1, 20 (Mo.2004). Point denied.

### D. Section 211.447.6–Best Interest of the Child

██ In his final point, Father contends that the trial court failed to comply with the requirements of Section 211.447.6. Section 211.447.6 directs the trial court to "evaluate and make findings" on seven factors, "when appropriate and applicable to the case." See *In the Interest of E.D.M.,* 126 S.W.3d 488, 497 (Mo.App. W.D.2004). The evaluation required "is a subjective assessment of evidence" and we do not reweigh the evidence upon appellate review. *B.L.H.,* 158 S.W.3d at 283.

The Section 211.447.6 factors include: (1) the child's emotional ties to the parent; (2) whether the parent has maintained regular visitation or contact with the child; (3) the extent of payment of child support or other maintenance for the cost of the child's care; (4) whether the provision of additional services would likely bring about a lasting parental adjustment enabling a return of the child to the parent within a reasonable amount of time; (5) the parent's disinterest or lack of commitment to the child; (6) whether the parent has been convicted of a felony; and (7) deliberate acts of the parent or parental awareness of deliberate acts of another that pose substantial risk of physical or mental harm to the child. *In the Interest of E.D.H.,* 138 S.W.3d 761, 765–66 (Mo. App. E.D.2004).

In this case, the trial court made the following findings applicable to Section 211.447.6:(1) any emotional ties between A.A.T.N. and Father are not relevant because she will not be able to return to Father in any reasonable amount of time and her need for a permanent home outweighs any currently existing emotional ties; (2) Father maintained regular visitation with A.A.T.N.; (3) Father paid no support for A.A.T.N. and there was no order for him to pay a specific sum for her support; (4) additional services to Father were not likely to bring about a lasting parental adjustments enabling the return of A.A.T.N. to Father; (5) Father's actions indicated a lack of commitment to A.A.T.N.; and (6) Father physically abused A.A.T.N. and her sister, Annabelle.

The record reflects ample evidence supporting the trial court's findings that returning A.A.T.N. to Father's care is not in her best interest. First, Father repeatedly abused A.A.T.N. and her sister. Furthermore, Ms. Holzman testified that she believed Father would hurt A.A.T.N. if she returned home. She stated that A.A.T.N. continued to fear him and that that the "threat of potential unsafety" would traumatize A.A.T.N. if she returned home. She also explained that Father would not be able to participate in therapy with A.A.T.N. because he did not acknowledge his abuse. She also predicted that the conditions which caused A.A.T.N.'s removal from the home would not change in the future.

Furthermore, Ms. Hager concluded that Mother would be unable to protect A.A.T.N. from Father if A.A.T.N. returned to Father's care. Finally, Ms. Hager stated that A.A.T.N. did not want to live with Father because she feared he would hurt her. Under these circumstances, the trial court did not abuse its discretion by finding that termination was in A.A.T.N.'s best interest. Point denied.

### Conclusion

The decision of the trial court is affirmed.

MARY K. HOFF, P.J., and CLIFFORD H. AHRENS, J., Concur.