

# In the
# Missouri Court of Appeals
## Western District

IN THE INTEREST OF:  J.S. and N.D. ,

L.D. (MOTHER),

          Appellant,

v.

JUVENILE OFFICER

          Respondent.

WD78628

OPINION FILED:

December 22, 2015

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable John M. Torrence, Judge**

**Before Division One: Anthony Rex Gabbert, P.J., Victor C. Howard, and Cynthia Martin,**

**JJ.**

L.D. ("Mother") appeals the Family Court's judgment terminating parental rights to her biological children, J.S. and N.D.[1]  Mother asserts that the trial court erred by: (1) improperly relying upon allegations of sexual abuse which she did not have an opportunity to refute; (2) failing to engage in reasonable efforts at reunification between Mother and the children; and (3) failed to prove by clear, cogent, and convincing evidence that Mother abused and neglected her children, failed to rectify harmful conditions, and was unfit to be a parent.  We affirm.

---

[1] The respective fathers of J.S. and N.D. did not appear and were tried by default.

**Facts and Procedural History**

L.D. ("Mother") is the biological mother of J.S., a boy born September 4, 2005, and N.D., a girl born May 28, 2010. The children lived with Mother until September 12, 2012 when they were removed from the home and placed into foster care following hotline calls alleging that the children were acting out sexually. When the children were removed, there were six adults and four children living in the home; at least one other adult and two other children also spent time there on a regular basis. Prior to the children's removal, services were put into the home as a result of allegations that there was a lack of supervision of the children, that the children were acting out sexually, and that the children were being exposed to sexual materials and activity in the home. These pre-removal services included Intensive In-Home Services, a safety plan regarding proper supervision of the children, and referrals to individual therapy for the children and Mother. In the safety plan, Mother admitted that J.S. had been sexually abused by family members in the home. The children were removed and placed into foster care only after the safety plan was broken when the children were again left unsupervised and acted out sexually with each other.

On September 13, 2012, the Juvenile Officer filed a petition against Mother alleging abuse and neglect of J.S. and N.D. On November 14, 2012, the court sustained the following allegations against Mother in the underlying juvenile case:

> During 2012, the child's [J.S.] mother knew or should have known that the child and other children living in the family home have repeatedly engaged in sexual acts, including sodomy, with each other. During June and July of 2012, the Children's Division provided multiple social services and educational services to the child's mother and other adults in the family home in an effort to protect the children from the ongoing sexual behaviors of the [other] children. Despite the Children's Division's provision of said services, the child's mother has failed or refused to ensure that the child and the child's siblings were properly supervised and protected from sexual behaviors between the children. As a result, on or about September 1, 2012, the child and the child's siblings were again exposed to sexual activity when the child's half-brother, age 5, and

2

another 5 year old boy living in the home engaged in sodomy. Further, although the child's mother was urged to obtain therapeutic services for the child's siblings, she failed and refused to do so. Further, the child's mother has failed to ensure that her own sexual activity is conducted in private such that the child [N.D.] is allowed to sleep in the mother's bed when the mother is engaging in sexual actions.

After Mother stipulated to the First Amended Petition, the court placed J.S. and N.D. in the custody of the Children's Division and ordered Mother to participate in services to aid reunification. These services included: a psychological evaluation for Mother; individual therapy for Mother, her boyfriend, and the children; a parent aid; psychiatric medication compliance; and contact as therapeutically recommended with J.S. Supervised contact was ordered with N.D.

After J.S. was placed in foster care and began individual therapy, he disclosed additional incidents of sexual abuse which he suffered at the hands of an uncle and other family members. These included being touched inappropriately by adults and other children who were living in the home. Furthermore, on at least two occasions in 2013, he disclosed additional sexual abuse committed by Mother, stating that he "sucked on [his mother's] boobies and put his hands on [her] privates" while they were in the bath together. After J.S. made these statements, his therapist notified the Children's Division and contact between J.S. and Mother was ended. While in therapy, J.S. also disclosed that he had witnessed his uncle (who also lived in the home) inappropriately touching his sister, N.D., on several occasions.

Following a Permanency Review on September 19, 2013, the court found J.S.'s statements regarding Mother's sexual abuse to be substantial and credible. Despite this finding, and despite Mother's stipulation to the initial abuse allegations in 2012, Mother subsequently denied any wrongdoing prior to her children's removal and claimed that J.S. was lying regarding her abuse of him. Accordingly, in the Permanency Review findings, the court found that

3

"[b]ecause the mother continue[d] to deny any responsibility for [J.S.'s] abuse and lack of supervision, reunification . . . [was] extremely unlikely in a manner consistent with the children's well-being."

Since that time, the children have remained in foster care and have not had contact with Mother as per therapeutic recommendation. J.S. has continued to make additional disclosures to therapists with regards to sexual activity and exposure in the home. He has also expressed fear at the prospect of returning to Mother's home because "it was horrible" and because of the abuse he suffered and witnessed in the home.

On July 29, 2014, the Juvenile Officer filed a petition for termination of parental rights alleging abuse and neglect, failure to rectify harmful conditions, and parental unfitness. In assessing the petition, the trial court noted Mother's failure to rectify the harmful conditions that initially brought the children under the court's jurisdiction in that Mother refused to take responsibility for the sexual abuse of her children by family members. The court also pointed to the fact that Mother "failed to derive any benefit from services [provided by the Children's Division]" in that she refused to acknowledge her own role in the abuse of J.S. Although the court noted that Mother had provided some gifts, holiday cards, and food for her children since they were removed from her care, it also pointed out that she was behind in her court-ordered child support payments by $5,000.00. Following consideration of these and other factors, the court terminated Mother's parental rights on April 17, 2015.

**Standard of Review**

To terminate parental rights upon a petition filed by a juvenile officer, the juvenile court must find that there is at least one statutory ground for termination supported by clear, cogent, and convincing evidence and find that the termination is in the best interests of the child by a

4

preponderance of the evidence. *See* § 211.447[2]; *In re B.H.*, 348 S.W.3d 770, 772 (Mo. banc 2011) (internal citation omitted); *In re A.M.S.*, 272 S.W.3d 305, 308 (Mo. App. W.D. 2008). "Clear, cogent, and convincing evidence" is that which "instantly tilts the scales in favor of termination when weighed against the evidence in opposition and the finder of fact is left with the abiding conviction that the evidence is true." *In re K.A.W.*, 133 S.W.3d 1, 12 (Mo. banc 2004).

Upon review, we must affirm the trial court's judgment "unless there is no substantial evidence to support it, it is contrary to the evidence, or it erroneously declares or applies the law." *In re K.A.W.*, 133 S.W.3d 1, 11 (Mo. banc 2004). We review any conflicting evidence in the light most favorable to the trial court's judgment, and we defer to the trial court's judgment on factual issues such as the credibility of witnesses. *Id.* at 11-12. "When the trial court finds multiple statutory grounds for termination of parental rights, in order to affirm the judgment this Court need only find that one of the statutory bases was proven and that the termination was in the best interests of the child." *In Re T.R.W.*, 317 S.W.3d 167, 170 (Mo. App. 2010).

## Analysis

### I. Grounds for termination under § 211.447.5(3)

In Mother's third point on appeal, she contends that the court failed to determine by clear, cogent, and convincing evidence that she failed to rectify the harmful conditions which initially led to the court's assumption of jurisdiction over her children, and failed to determine that potentially harmful conditions continued to exist.[3] In terminating her parental rights under

---

[2] All statutory references cite to RSMo Supp. 2014 unless otherwise indicated.

[3] In Mother's first point on appeal, she challenges the trial court's termination of parental rights based on Section 211.447.5(2) (abuse and neglect). In her third point on appeal, Mother challenges the trial court's termination of parental rights based on three separate grounds: Sections 211.447.5(2) (abuse and neglect), 211.447.5(3) (failure to rectify), and 211.447.5(6) (parental unfitness). One ground alone is sufficient to terminate parental rights if it is supported by clear and convincing evidence. *See In re B.H.*, 348 S.W.3d 770, 772 (Mo. banc

5

Section 211.447.5(3), Mother argues that the trial court erroneously used her refusal to acknowledge the sexual abuse by family members in the home and her own sexual abuse of J.S. as evidence that she would be unlikely to rectify harmful conditions. Because the court properly considered all evidence before it when making its findings, and because adequate evidence existed that supported termination of parental rights under 211.447.5(3), we affirm the trial court's decision.

To terminate parental rights under Section 211.447, the court is first required to find by "clear, cogent, and convincing evidence" that one or more grounds for termination exists. *In re B.H.*, 348 S.W.3d 770, 772 (Mo. banc 2011) (internal citation omitted). Grounds for termination include a parent's failure to rectify both new and ongoing conditions that are harmful to the children. § 211.447.5(3). To terminate parental rights under 211.447.5(3), the court must first find: (1) that the children have been under the jurisdiction of the juvenile court for at least one year; (2) "that the conditions which led to assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist"; and (3) "that there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future, or the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home." *Id.* "[A]s to the second and third required findings, there are two permissible alternative findings." *In re B.J.K.*, 197 S.W.3d 237, 243 (Mo. App. W.D. 2006).

Section 211.447.5(3) also requires the court to make four specific findings regarding: (a) the parent's progress in complying with a social service plan recommended by the Children's Division; (b) the parent's success or failure in adjusting her circumstances to provide a proper

2011); *In re A.M.S.*, 272 S.W.3d 305, 308 (Mo. App. W.D. 2008). Because we find clear and convincing evidence supporting termination under Section 211.447.5(3) (failure to rectify), we discuss Mother's Point III first and do not address Point I or the remainder of Point III.

home for the children with the help of the Children's Division, counselors, and therapists; (c) whether the parent has a mental condition rendering her unable to provide and care for her children; and (d) whether the parent has a chemical dependency rendering her unable to provide and care for her children. § 211.447.5(3)(a)-(d).

Here, the trial court found that: (1) the children had been under the jurisdiction of the juvenile court for more than one year; (2) the conditions which led to assumption of jurisdiction still persisted *and* conditions of a potentially harmful nature continued to exist; and (3) there was little likelihood that those issues would be remedied at an early date so that the children could be returned to the parents in the near future. Thus, the court found that there was clear and convincing evidence to support all three overarching findings required to terminate parental rights under Section 211.447.5(3).

The conditions which initially brought J.S. and N.D. under the jurisdiction of the Jackson County Family Court were based on allegations of parental abuse and neglect. Mother stipulated to these initial allegations and they were sustained by the Family Court on November 14, 2012. After the children were placed in foster care, J.S. reported additional harmful conditions regarding Mother's sexual abuse of him and a family member's abuse of N.D. Although Mother contended that J.S. was lying about these incidents and stated that she did nothing wrong with regard to the care and supervision of her children, the Family Court expressly found J.S.'s statements to be substantial and credible. Because Mother continued to deny any responsibility for the conditions which initially brought the children under the court's jurisdiction (*i.e.*, the sexual abuse by family members and a lack of appropriate supervision), or for other potentially harmful conditions (*i.e.*, her own abuse of J.S.), the court concluded that reunification was

7

unlikely in a manner consistent with the children's well-being and recommended that the goal be termination of parental rights and adoption.

Between September 2013 and July 29, 2014, the Family Court repeatedly made detailed findings regarding continuing harmful conditions and continued to order that social services be provided to Mother and the children. Throughout the termination proceedings, the trial court took into account all evidence presented by Mother and the Juvenile Officer, considering the sexual abuse by Mother as merely one factor in its ultimate determination, along with other evidence pertaining to Mother's inability to protect the children from continued abuse while in the home. Even if the court had not found J.S.'s statements regarding Mother's abuse to be substantial and credible—which it did, and which is a finding to which we must defer, *In re K.A.W.*, 133 S.W.3d 1, 11-12 (Mo. banc 2004)—its findings regarding the other instances of abuse and Mother's failure to accept them would still present harmful conditions that Mother refused to rectify.

The record reflects clear and convincing evidence of existing and/or persisting harmful conditions sufficient to warrant termination of parental rights. The court previously adjudicated the children to be abused and neglected by Mother on grounds that the children were exposed to inappropriate sexual contact while in her care that she knew or should have known about, and on grounds that Mother engaged in sexual relations with others while the children were in or observing Mother's bed. At the time of the adjudication, Mother acknowledged this abuse and neglect and did not appeal the court's findings in that regard. Despite the fact that Mother's very young children were engaging in sexual behaviors at the time of their removal and reported additional abuse and neglect after their removal, Mother later retracted acknowledgement of her role in all abuse and/or neglect and persisted with that position at the termination of parental

8

rights hearing. Consequently, we find that the evidence justified the court's finding that Mother's refusal to acknowledge the harm that came to the children while they were in her care was indicative of existing harmful conditions that Mother failed to rectify and there was little likelihood that the children could be returned to Mother's care in the near future.

As to the four specific findings required under 211.447.5(3), the court found that: (a) Mother failed to make progress in complying with the terms of the social service plan because she failed to derive any benefit from those services by continuing "to claim she did nothing wrong in regards to the care of her children" and to claim that J.S. was lying about her own sexual abuse of him; (b) efforts by the Children's Division, counselors, and therapists to help Mother adjust her circumstances to provide a proper home for the children had failed because Mother continually refused to take responsibility for either the initial abuse or her own sexual abuse of J.S., and because she was in arrears for her court ordered child support; (c) Mother did not have a mental condition preventing her from caring for her children; and (d) Mother did not have a chemical dependency preventing her from caring for her children. Thus, the court made all four specific findings required to terminate parental rights under Section 211.447.5(3)(a)-(d).

After reviewing the record, we find that clear and convincing evidence supporting grounds for termination of parental rights pursuant to Section 211.447.5(3). First, at the time of the termination of parental rights hearing, the children had been under the jurisdiction of the court for approximately two-and-a-half years. Second, the record supports the court's conclusion that Mother failed to rectify the initial and continuing conditions that precipitated her children's removal by failing to acknowledge her role in her children's abuse. The evidence reflects that, rather than progressing and demonstrating an ability to protect the children from future harm, Mother actually regressed by refusing to acknowledge the abuse that she had previously

9

conceded occurred and that had, in fact, occurred. The court was correct in finding little likelihood that these harmful conditions would be rectified at an early date so that the children could return to Mother's care. Finally, the record reflects that the Children's Division offered numerous services to Mother over a span of several years, including Intensive In-Home Services, a safety plan regarding the supervision of the children, referrals to individual therapy for Mother and the children, a parent aid, and contact with the children as therapeutically recommended. The record further supports the conclusion that, in spite of these services, there is little likelihood that the conditions which led to the assumption of jurisdiction will be remedied at an early date so that imminent reunification would be possible. We therefore affirm the trial court's decision to terminate Mother's parental rights because there is substantial evidence to support it. *See In re K.A.W.*, 133 S.W.3d 1, 11 (Mo. banc 2004).

We also find that a preponderance of the evidence supports that termination of parental rights was in J.S. and N.D.'s best interest. At the time of trial, J.S. and N.D. had not been in contact with Mother or been in her care for nearly three years, resulting in a weak emotional attachment to her. The evidence supports the trial court's conclusion that Mother's failure to acknowledge her role in failing to protect her children from sexual abuse made reunification extremely unlikely in a manner consistent with the children's well-being. Mother's third point is denied.

## II.    Reasonable Efforts at Reunification

In Mother's second point on appeal, she contends that the State did not make reasonable efforts at reunification before filing a petition for termination of parental rights because the State permanently denied her contact with J.S. and N.D. She further argues that the court's decision to terminate her visits with the children (as per therapeutic recommendation) was not supported by

10

adequate evidence because this decision was based upon an unsubstantiated hotline call alleging that she sexually abused J.S.

We first note that the record reflects numerous instances in which the court made statutorily required "efforts at reunification" findings throughout the pre-termination proceedings, and all of these findings were supported by the evidence presented. As discussed above, the record reflects that the Children's Division offered numerous services to Mother over a span of several years, both before and after the children's removal from Mother's care, and before and after Mother's visits with the children were terminated. All services were offered to Mother for the purposes of either family preservation or family reunification. These services included Intensive In-Home Services, a safety plan regarding the supervision of the children, referrals to individual therapy for Mother and the children, a parent aid, and contact with the children as therapeutically recommended. However, Mother consistently failed to progress with the terms of the social service plan aimed at preserving the familial relationship by failing to acknowledge her role in the trauma suffered by her children.

This last finding is important in that, although Mother progressed in *some* terms of the social service plan (*e.g.*, she completed some individual therapy), *some* progress in completing the terms of a social service plan is not an adequate justification for continued parental rights where a dangerous condition remains uncorrected. *See*, *e.g.*, *In re I.G.P.*, 375 S.W.3d 112, 121 (Mo. App. W.D. 2012) ("A parent's lack of effort to comply with the [social service] plan, *or effort without success*, can help predict future problems. . . . [And] failure to achieve progress towards the terms of a social service plan supports 'termination of parental rights *when a dangerous condition is left uncorrected as a result*.'") (internal citations omitted) (emphasis added).

11

Here, even though visitation between Mother and the children was suspended, that did not mean that Mother could not engage in other proffered activities to foster reunification— namely, addressing the trauma inflicted upon her children in individual therapy or by some other means. Although Mother's visits with J.S. and N.D. were terminated at the recommendation of the children's therapist following J.S.'s disclosure of Mother's abuse, the Children's Division continued to offer multiple services to Mother throughout the remainder of the pre-termination proceedings. Despite the existence of continued services provided to Mother, the record reflects that she failed to derive benefit from the services because she "continued to claim she did nothing wrong in regards to the care of her children," and claimed that J.S. was lying about her own sexual abuse of him.

Upon review of the record, we find ample evidence that reasonable efforts were made to reunify Mother and the children prior to the termination proceedings.[4] As demonstrated by the multiple "reasonable efforts" findings made by the Family Court, the Children's Division made adequate and reasonable efforts at reunification prior to the termination proceedings. However, in light of Mother's failure to make progress in complying with the social service plan, and given the amount of services provided to Mother pre- and post-removal of the children, the trial court justifiably concluded that there was little likelihood that additional services would bring about lasting parental adjustment enabling a return of the children. Point II is denied.

## Conclusion

We find that there was clear and convincing evidence supporting the trial court's decision to terminate Mother's parental rights pursuant to Section 211.447.5(3). The children, J.S. and

---

[4] The evidence of "reasonable efforts" made in this case was such as would pass either the clear and convincing standard or the preponderance standard. Therefore, we need not decide which standard is appropriate, although it appears that a preponderance of evidence is the appropriate standard here. Likewise, because of the abundance of such evidence, we do not address the issue of the effect on a judgment of termination of parental rights of a failure by the State to make "reasonable efforts."

12

N.D., have been under the jurisdiction of the juvenile court for more than one year, conditions of a potentially harmful nature continue to exist, and there is little likelihood that those conditions will be remedied at an early date so that the children can be returned to Mother in the near future. Furthermore, continuation of the child-parent relationship greatly diminishes the children's prospects for early integration into a stable and permanent home. There were sufficient findings to support the best interest determination made by the trial court, and the evidence supports the trial court's decision that it was in the best interests of the children to terminate parental rights. For these reasons, we affirm the trial court's judgment.

_____
Anthony Rex Gabbert , Judge

All Concur.