

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| IN THE INTEREST OF: A.C.G. | ) | |
| | ) | |
| JUVENILE OFFICER and | ) | |
| DEPARTMENT OF SOCIAL | ) | |
| SERVICES, CHILDREN'S DIVISION, | ) | |
| | ) | **WD79274** |
| Respondents, | ) | |
| | ) | **OPINION FILED:** |
| v. | ) | **September 13, 2016** |
| | ) | |
| | ) | |
| A.G. (Natural Mother), | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Benton County, Missouri**
**The Honorable Michael O. Hendrickson, Judge**

**Before Division IV:** Mark D. Pfeiffer, Chief Judge, Presiding, and
James Edward Welsh and Edward R. Ardini, Jr., Judges

A.G. ("Mother") appeals from the Judgment of the Circuit Court of Benton County,

Missouri, Juvenile Division ("trial court"), terminating her parental rights to her daughter, A.C.G.

We affirm.

**Factual and Procedural Background[1]**

Mother has three children, one of whom is A.C.G., born July 17, 2010. In early March 2012, the Department of Social Services, Children's Division ("Children's Division"), was notified that Mother and A.C.G.'s father ("Father") had appeared in court as a result of a custody dispute and both had tested positive for drugs. The court ordered that Mother and Father were not to have contact with A.C.G. until they had clean urine analyses. Ultimately, A.C.G. was brought into the protective custody of the Children's Division and was placed in a foster home, where she has remained ever since.

On May 1, 2012, the Benton County circuit court held an adjudication hearing regarding the alleged abuse and neglect of A.C.G. With Mother's consent, the court assumed jurisdiction over A.C.G. A.C.G. was ordered a ward of the court, with a goal of reunification.

The last contact Mother had with A.C.G. was in February 2013. The last contact Mother had with A.C.G.'s foster mother regarding visits or communication with A.C.G. was in July 2013. Finally, in December 2013, the Children's Division recommended changing the goal from reunification to termination. Mother did not maintain contact with the Children's Division in order to facilitate visits with A.C.G., and Mother's whereabouts were unknown until April 2014.

On June 20, 2014, the Children's Division filed a petition to terminate Mother's parental rights to A.C.G. pursuant to section 211.447,[2] alleging abuse and/or neglect and failure to rectify. On August 21, 2015, and September 1, 2015, the trial court held a termination of parental rights hearing ("TPR hearing"). Thereafter, the trial court entered judgment terminating Mother's

---

[1] On appeal from a judgment of termination of parental rights, the evidence is viewed in the light most favorable to the judgment. *Juvenile Officer v. C.E.F.* (*In the Interest of S.M.F.*), 393 S.W.3d 635, 637 n.2 (Mo. App. W.D. 2013).

[2] All statutory references are to the Revised Statutes of Missouri 2000, as supplemented.

parental rights to A.C.G.[3]  The trial court based termination on three grounds:  (1) abandonment, § 211.447.5(1)(b); (2) neglect, § 211.447.5(2); and (3) failure to rectify, § 211.447.5(3).  The trial court also found that termination would be in A.C.G.'s best interests, § 211.447.7.

Mother appeals and argues that the trial court's judgment as to abandonment was against the weight of the evidence.  Mother also argues that the trial court erred in failing to take judicial notice of two Jackson County, Missouri, circuit court cases concerning her other two children.

**Standard of Review**

Under *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), we will affirm the trial court's judgment "unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law.  The judgment will be reversed only if we are left with a firm belief that the order is wrong."  *Greene Cty. Juvenile Office v. D.G.R.* (*In the Interest of J.A.R.*), 426 S.W.3d 624, 626 (Mo. banc 2014).  Furthermore:

> Conflicting evidence will be reviewed in the light most favorable to the trial court's judgment.  Appellate courts will defer to the trial court's credibility assessments.  When the evidence poses two reasonable but different inferences, [we are] obligated to defer to the trial court's assessment of the evidence.
> . . . .
> After [we] determine[ ] that one or more statutory ground has been proven by clear, convincing, and cogent evidence, [we] must ask whether termination of parental rights was in the best interest of the child.  At the trial level, the standard of proof for this best interest inquiry is a preponderance of the evidence; on appeal, the standard of review is abuse of discretion.

*Id*. (internal quotation omitted).  "Evidence is clear, cogent and convincing, if it instantly tilts the scales in favor of termination when weighed against the evidence in opposition and the finder of fact is left with the abiding conviction that the evidence is true."  *Juvenile Officer v. C.E.F.* (*In the Interest of S.M.F.*), 393 S.W.3d 635, 643 (Mo. App. W.D. 2013) (internal quotation omitted).  "This standard may be satisfied even when evidence contrary to the trial court's finding is

---

[3] The parental rights of Father were also terminated.  Father did not appeal.

3

presented or the evidence might support a different conclusion." *In the Interest of S.Y.B.G.*, 443 S.W.3d 56, 59 (Mo. App. E.D. 2014). The "best interest" determination, which is reviewed for an abuse of discretion, is a subjective assessment based on the totality of the circumstances. *Id.* "An abuse of discretion occurs only when the trial court's ruling is clearly against the logic of the circumstances and [is] so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." *Id.* (internal quotation omitted).

"Appellate courts act with caution in exercising the power to set aside a . . . judgment on the ground that it is against the weight of the evidence." *Ivie v. Smith*, 439 S.W.3d 189, 205 (Mo. banc 2014). "[A] claim that the judgment is against the weight of the evidence presupposes that there is sufficient evidence to support the judgment." *Id.* (internal quotation omitted). "In other words, 'weight of the evidence' denotes an appellate test of how much persuasive value evidence has, not just whether sufficient evidence exists that tends to prove a necessary fact." *Id.* at 206. "The against-the-weight-of-the-evidence standard serves only as a check on a circuit court's potential abuse of power in weighing the evidence, and an appellate court will reverse only in rare cases, when it has a firm belief that the decree or judgment is wrong." *Id.* When reviewing the record in an against-the-weight-of-the-evidence challenge, we defer to the circuit court's findings of fact when the factual issues are contested and when the facts as found by the circuit court depend on credibility determinations. *Id.* Under this standard of review, "the circuit court is free to believe all, some, or none of the evidence offered to prove a contested fact." *Id.* "A circuit court's judgment is against the weight of the evidence only if the circuit court could not have reasonably found, from the record at trial, the existence of a fact that is necessary to sustain the judgment." *Id.* When two reasonable but different conclusions may be drawn from the evidence, appellate courts must defer to the circuit court's assessment of that evidence. *Id.*

"We review a decision to admit or exclude evidence for an abuse of discretion." *Juvenile Officer v. F.D.* (*In the Interest of S.F.M.D.*), 447 S.W.3d 758, 767 (Mo. App. W.D. 2014) (internal quotation omitted). "An abuse of discretion occurs when the court's decision is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id.* (internal quotation omitted).

**Judicial Notice**

Initially, we address Mother's first point in which she asserts that the trial court erred in not taking judicial notice of two cases in the Circuit Court of Jackson County, Missouri, involving Mother's other two children.

At the TPR hearing, Mother's counsel asked the trial court to take judicial notice of the two Jackson County cases. Counsel asked the trial court to electronically access the files on Case.net and take judicial notice of whatever could be viewed. The attorney for the Children's Division objected based on lack of relevancy and on section 211.321.1, which governs the disclosure of juvenile records. The trial court refused to take judicial notice of the Jackson County case files.

"Section 211.321 governs Missouri's juvenile court records, the confidentiality of those records, and exceptions to Missouri's general policy of confidentiality." *Mason v. State*, 368 S.W.3d 182, 186 (Mo. App. W.D. 2012). Section 211.321.1 provides, in pertinent part, that "[r]ecords of juvenile court proceedings as well as all information obtained and social records prepared in the discharge of official duty for the court shall not be open to inspection or their contents disclosed, except by order of the court to persons having a legitimate interest therein." Documents in juvenile court records "are confidential absent an order of the judge of the juvenile court." *State ex rel. S.M.H. v. Goldman*, 140 S.W.3d 280, 282 (Mo. App. E.D. 2004). "[W]hether

5

or not a party has a legitimate interest in the contents of the records of the juvenile court varies from case to case[,] and the question is one to be decided by the juvenile court in its discretion, being guided by the policy considerations underlying Section 211.321 and other provisions of the juvenile code." *Id.* at 283. "The general policy of the juvenile code is to hold the records of juvenile proceedings inviolate." *Id.* Clearly, section 211.321.1 is a specific statute protecting the confidentiality of the records of juvenile court proceedings and providing the procedure for disclosure.

On the other hand, section 490.130 is a general statute relating to the admissibility of court records into evidence. Section 490.130 provides in pertinent part:

> Records of proceedings of any court of this state contained within any statewide court automated record-keeping system established by the supreme court shall be received as evidence of the acts or proceedings in any court of this state without further certification of the clerk, provided that the location from which such records are obtained is disclosed to the opposing party.

The judicial determination whether a juvenile court record may be disclosed is a necessary predicate to the decision whether it may be admitted into evidence or may be judicially noticed. Here, there is no evidence in the record that Mother's counsel moved the Jackson County Circuit Court to permit the inspection or disclosure of the two case files involving Mother's other two children or established a legitimate interest therein sufficient to obtain an order of the juvenile division permitting disclosure of the Jackson County records in A.C.G.'s Benton County case.

Furthermore, while a court may take judicial notice of its own records in prior proceedings that are between the same parties and are concerned with the same basic facts involving the same general claims for relief, a court will not generally take judicial notice of records and facts in one action while deciding another action with different parties and different issues. *Juvenile Officer v. P.W.* (*In Interest of C.M.W.*), 813 S.W.2d 331, 333 (Mo. App. W.D. 1991). Here, the records

6

Mother's counsel requested the trial court to take judicial notice of are from proceedings in another county involving Mother's other two children. Neither case involves A.C.G. or Mother's efforts to regain custody of her. Mother is the only party common to all three cases. Hence, the parties and issues are not similar and records from these unrelated cases possess, at most, questionable relevancy.

We give the trial court's decision regarding the exclusion of evidence substantial deference on appeal. *Khoury v. ConAgra Foods, Inc.*, 368 S.W.3d 189, 195 (Mo. App. W.D. 2012). On the record before us, we discern no abuse of discretion by the trial court as to the challenged evidentiary ruling.

Point I is denied.

## Statutory Grounds for Termination

We now turn to Mother's second and third points in which she asserts that the trial court's judgment terminating her parental rights on the grounds of abandonment was against the weight of the evidence.[4]

---

[4] Mother's second and third points are identical except for the additions to Point III indicated in italics:

> The trial court erred to the prejudice of appellant when it terminated the mother's parental rights to her minor child because said finding was against the weight of the evidence in that mother did not abandon the child, leaving the child without any provisions for parental support without making arrangements to visit without good cause when mother was in substantial compliance with her written service contract in Jackson County; *Mother has maintained adequate housing* and she did request visitation with her child and did attempt to facilitate a relationship with her child and participated in various programs to better herself and her ability to parent her child *but visitation was denied to her.*

However, Mother's argument under Point III appears to challenge the trial court's best interest determination, which is not mentioned in the point relied on. Rule 84.04(e) requires that "[t]he argument shall be limited to those errors included in the "'Points Relied On.'" "Arguments raised for the first time in the argument portion of a brief and not raised in the points relied on are not preserved for review and are considered abandoned." *M.E.H. v. Greene Cty. Juvenile Office* (*In Interest of M.T.E.H.*), 468 S.W.3d 383, 398 (Mo. App. S.D. 2015) (internal quotation omitted). That said, we have exercised our discretion to address Mother's "best interest" argument in today's ruling.

The trial court's judgment concluded that the Children's Division proved by clear, cogent, and convincing evidence three grounds for termination of Mother's parental rights: abandonment under section 211.447.5(1)(b), neglect under section 211.447.5(2), and what is commonly referred to as "failure to rectify" under section 211.447.5(3). Here, in her second and third points relied on, Mother does not challenge the neglect or failure to rectify findings of the trial court, both of which are sufficient for terminating her parental rights. Mother only challenges the trial court's findings with regard to abandonment under section 211.447.5(1)(b).

When the trial court finds multiple statutory grounds for termination of parental rights, we will affirm the judgment if any one of those grounds was proven and termination was in the child's best interests. *L.D. v. Juvenile Officer* (*In the Interest of J.S.*), 477 S.W.3d 719, 723 (Mo. App. W.D. 2015). Even if we were to find that Mother is correct in her challenge to the trial court's finding of abandonment, her appeal necessarily must fail because "[o]ne ground alone is sufficient to terminate parental rights if it is supported by clear and convincing evidence." *Id.* at 723 n.3. However, because the termination of parental rights is "an exercise of awesome power and should not be done lightly[,]" *Mo. Div. of Family Servs. v. A.R.H.* (*In the Interest of S.J.H.*), 124 S.W.3d 63, 66 (Mo. App. W.D. 2004) (internal quotation omitted), we have chosen to exercise our discretion to review the record to determine whether the Children's Division established at least one of the three grounds for termination. Our *ex gratia* review of the trial court's abandonment finding demonstrates that it is supported by clear, cogent, and convincing evidence.

Section 211.447.5(1)(b) provides for termination of parental rights when the court finds that the child has been abandoned, in that, for a period of six months or longer, "[t]he parent has, without good cause, left the child without any provision for parental support and without making arrangements to visit or communicate with the child, although able to do so[.]" Our review of the

8

record shows that A.C.G. was brought into the protective custody of the Children's Division and was placed in a foster home in March 2012, where she has remained. In February 2013 and July 2013, Mother refused to sign written service agreements with the Children's Division that required her to submit to court-ordered hair follicle drug testing. Mother's last visit with A.C.G. was on February 15, 2013.

From July 2013 to April 2014, Mother had no contact with the Children's Division. She did not sign written service agreements with the Children's Division until June 2014, when her second daughter was taken into custody by Jackson County and the petition for termination of her parental rights to A.C.G. was filed. The trial court ordered a bonding assessment, which was performed on July 29, 2015. The conclusion of the psychologist performing the bonding assessment was that no bond or attachment remained between Mother and A.C.G.

From February 15, 2013, until the July 2015 bonding assessment, Mother did not request any visits with A.C.G. Even though Mother had the foster mother's contact information, Mother did not telephone or text the foster mother to inquire about A.C.G.'s welfare. Mother did not provide A.C.G. gifts, clothes, diapers, food, or money; she never asked to come to A.C.G.'s pre-school functions or doctor's appointments; she failed to show up for scheduled visits with A.C.G. Mother did not ask for visits with A.C.G. until after the termination of parental rights petition was filed in June 2014 because she knew "I wasn't doing the things that I needed to do to get my daughter back, so I knew that I wasn't going to get visits."

"Abandonment is defined as a willful delivery of the child with intention that the severance be permanent [or] a voluntary and intentional relinquishment of the custody of the child to another with the intent to never again claim the rights of parent or perform the duties of a parent." *In re Adoption of C.M.B.R.*, 332 S.W.3d 793, 816 (Mo. banc 2011) (internal quotation omitted).

9

"Abandonment can be proven by showing that, without just cause or excuse, a parent has intentionally withheld [her] presence, care, love, protection, maintenance[,] and the opportunity for display of filial affection from the child." *Id*. (internal quotation omitted). Abandonment is largely focused on the parent's intent, and evidence from before and after the six-month statutory period may be considered in determining a parent's intent. *Juvenile Officer v. B.R.* (*In the Interest of G.E.R.*), 441 S.W.3d 190, 196 (Mo. App. W.D. 2014). "A parent is not allowed to maintain only a superficial or tenuous relationship with [her] child in order to avoid a determination of abandonment." *Juvenile Officer v. R.D.K.* (*In the Interest of R.K.*), 982 S.W.2d 803, 806 (Mo. App. W.D. 1998). "In fact, courts may regard such efforts as token and terminate parental rights despite their existence." *Id.* Furthermore, "[t]he court may attach little or no weight to infrequent visitations, communications, or contributions." § 211.447.8.

Mother challenges the trial court's findings with regard to abandonment as being against the weight of the evidence. An against-the-weight-of-the-evidence challenge requires completion of four sequential steps:

> (1) identify a challenged factual proposition; (2) identify all of the favorable evidence supporting the proposition; (3) identify evidence contrary to that proposition, resolving all conflicts in testimony in accordance with the trial court's credibility determinations; and (4) demonstrate why the favorable evidence, along with the reasonable inferences drawn from that evidence, is so lacking in probative value, when considered in the context of the totality of the evidence, that it fails to induce belief in that proposition[.]

*K.D.P. v. Juvenile Officer* (*In the Interest of I.G.P.*), 375 S.W.3d 112, 127 (Mo. App. W.D. 2012) (citing *Houston v. Crider*, 317 S.W.3d 178, 187 (Mo. App. S.D. 2010)).

Mother satisfies the first step of an against-the-weight-of-the-evidence challenge by challenging the proposition, as found in the trial court's judgment, that she had abandoned A.C.G. She also sets out evidence in the record contrary to this proposition, which satisfies the third step

of her against-the-weight-of-the-evidence challenge: that she was in substantial compliance with the Jackson County written service contracts, requested visitation with A.C.G., participated in programs to better herself and to better parent, and maintained stable housing.

However, Mother does not satisfy step two of the challenge in that she makes only minimal references to evidence in the record that is favorable to the judgment—evidence that we have recited previously in today's ruling—including the fact that Mother went almost two and a half years without even requesting visitation with her daughter.

It follows that by failing to fully identify all material favorable evidence to the judgment, Mother undermines her ability to demonstrate why that evidence was so lacking in probative value, when considered in the context of the totality of the evidence, that it fails to induce belief that she abandoned A.C.G.—the fourth and final step necessary to mount an against-the-weight-of-the-evidence challenge. "The omission of material favorable evidence from the weighing process strips [Mother's] purported demonstration of any analytical value or persuasiveness." *Houston*, 317 S.W.3d at 189. A favorable decision for Mother on points two and three:

> would require this Court to devise and articulate its own demonstration of how the omitted favorable evidence, either by itself or considered along with the partial favorable evidence included by [Mother] in [her] argument, . . . is lacking in probative value as compared to the totality of the evidence, so as to be against the weight of the evidence. Such action on our part would thrust us into becoming an advocate on [Mother's] behalf; a role we are prohibited from assuming.

*Id.*

11

The trial court's findings are consistent with the evidence and testimony adduced at the TPR hearing. Our review of the record as a whole reveals that there was clear, cogent, and convincing evidence to support the finding that Mother abandoned A.C.G.[5]

**Bests Interests of the Child**

If it appears by clear, cogent, and convincing evidence that a statutory ground for termination exists under section 211.447.5, then we review the trial court's determination that termination is in the best interests of the children for abuse of discretion. *In the Interest of P.L.O.*, 131 S.W.3d 782, 789 (Mo. banc 2004). "[A] finding that termination is in the child's best interest is a subjective assessment based on the totality of the circumstances." *M.E.H. v. Greene Cty. Juvenile Office* (*In Interest of M.T.E.H.*), 468 S.W.3d 383, 397 (Mo. App. S.D. 2015) (internal quotation omitted). We defer to the trial court's factual findings and credibility determinations and do not reweigh the evidence. *Id.* Termination has been found to be in the best interests of the child:

> where the child has spent the better portion of the child's life in the custody of others, where the mother has failed to improve her conduct to regain custody of her child, where the child has shown little emotional ties to the mother, and where adoption would be more difficult the longer the child remains in temporary foster care.

*Juvenile Officer v. M.F.* (*In the Interest of S.H.*), 915 S.W.2d 399, 405 (Mo. App. W.D. 1996).

Pursuant to section 211.447.7, the trial court must evaluate and make findings on seven "best interest" factors when considering whether to terminate the parent-child relationship. The specific factors, in order, and the trial court's findings, in quotation, are:

(1) The emotional ties to the birth parent:

"There are little or no emotional ties between mother and the child, and to the extent that any emotional ties exist . . . continuation of the relationship is detrimental to

[5] We further reiterate that Mother has not even challenged the trial court's rulings as to neglect and failure to rectify, either of which would independently provide a statutory basis for termination of parental rights.

12

the child in that . . . with the exception of the court ordered bonding assessment, mother has not had face-to-face contact with the child since February 15, 2013."

(2) The extent to which the parent has maintained regular visitation or other contact with the child:

"Mother fails to maintain regular visitation or other contact with the child."

(3) The extent of payment by the parent for the cost of care and maintenance of the child when financially able to do so including the time that the child is in the custody of the division or other child-placing agency:

"Mother does not provide support for the cost of care and maintenance of the child while financially able to do so including the time that the child has been in the custody of the Division or other child-placing agency and has not done so for more than twelve months."

(4) Whether additional services would be likely to bring about lasting parental adjustment enabling a return of the child to the parent within an ascertainable period of time:

"Additional services are not likely to bring about a lasting parental adjustment enabling a return of the child to mother within an ascertainable period of time."

(5) The parent's disinterest in or lack of commitment to the child:

"Mother has demonstrated a disinterest in or a lack of commitment to the child. She failed to request visitation with the child for over two years despite frequently living in the same town as the child and being invited to attend church with the foster family and the child."

(6) The conviction of the parent of a felony offense that the court finds is of such a nature that the child will be deprived of a stable home for a period of years; provided, however, that incarceration in and of itself shall not be grounds for termination of parental rights:

The trial court found this factor was inapplicable.

(7) Deliberate acts of the parent or acts of another of which the parent knew or should have known that subjects the child to a substantial risk of physical or mental harm:

The trial court found this factor was inapplicable.

§ 211.447.7. To restate the evidence as it bears on these findings is unnecessarily repetitive. Suffice it to say that the record amply supports these findings, and for that reason, the trial court did not abuse its discretion in finding that termination was in the best interests of A.C.G.

Points II and III are denied.

## Conclusion

We affirm the trial court's judgment terminating Mother's parental rights to A.C.G.

Mark D. Pfeiffer, Chief Judge

James Edward Welsh and Edward R. Ardini, Jr., Judges, concur.