**IN the INTEREST OF:
BH, III, Plaintiff,**

**Juvenile Officer, Respondent,**

v.

**L.H. (Mother), Appellant.**

**WD 80504**

Missouri Court of Appeals,
Western District.

Opinion filed: August 29, 2017

Ryan F. Kaiser, Kansas City, for Respondent.

Jason R. Harmon, for Appellant.

Before Division Two: Edward R. Ardini, Jr., Presiding Judge, Karen King Mitchell, Judge and Anthony Rex Gabbert, Judge

## EDWARD R. ARDINI, JR., JUDGE

L. H. (Mother) appeals the judgment of the Circuit Court of Jackson County terminating her parental rights. Finding no error, we affirm.

### Factual and Procedural Background [1]

Two-year-old B. H. III (the Child) and his older brother lived with Mother and their father.[2] On September 5, 2015, the Child's brother was shot in the head and killed during an altercation between Mother and the father. The shooting was ruled a homicide by the Jackson County Medical Examiner. Mother was taken into custody the same day and charged with murder in the second degree, domestic assault in the first degree, two counts of endangering the welfare of a child, and unlawful use of a weapon. She is currently incarcerated awaiting trial. The Child was placed in foster care.

On September 9, 2015, the Juvenile Officer of the Jackson County Circuit Court filed a petition requesting the court take jurisdiction over the Child pursuant to section 211.031.[3] This led to a bifurcated jurisdictional proceeding beginning with an adjudication hearing on February 1, 2016, at which the trial court sustained the allegations in the petition and continued the

---

1. The evidence is presented in the light most favorable to the judgment of the trial court. *In re S.M.H.*, 160 S.W.3d 355, 362 (Mo. banc 2005).

2. The father's parental rights were terminated on October 7, 2016; the father did not appeal.

3. All statutory citations are to the Revised Statutes of Missouri, 2000, as supplemented.

matter over for a disposition hearing.[4] On February 16, the Juvenile Officer and the Children's Division filed a motion asking the trial court to make a dispositional finding that Mother had committed a "severe act of physical abuse" and requested that they be relieved of making reasonable efforts to promote reunification. The trial court held its disposition hearing on February 18 and issued its Findings and Recommendations on February 24.

Based on the evidence presented, the trial court determined that the Child was in need of care and assumed jurisdiction over him. The trial court found that Mother's testimony that she was not responsible for the shooting and that the Child's brother had been shot by another individual was not credible. Instead, the trial court relied on the testimony of the Child's maternal grandmother that she had observed Mother and the children's father arguing just moments prior to hearing the shot fired and that the individual Mother alleged to be the shooter was not present in the home, let alone in the room where the argument and shooting occurred. The trial court also noted the extensive forensic evidence that had been presented relating to where ammunition was found, where the bullet struck, the nature of the wound inflicted, and the location of bloodstains and gunshot residue. The trial court found that this evidence supported the conclusion that Mother was the shooter.

In addition to finding that the evidence supported the conclusion that Mother was responsible for the death of the Child's brother, the trial court found that the family home was unsafe and unsanitary. Photographic evidence showed the house to be filthy and, in some places, lacking in basic structural needs such as adequate flooring. The trial court noted evidence of drug use and drug sales occurring in the home with illegal drugs and drug paraphernalia scattered throughout the residence including where the children slept. The extent of drug use occurring in the home and in the presence of the children was corroborated by testing performed on the deceased brother's liver indicating chronic exposure to amphetamine and methamphetamine. The trial court concluded that the Child, given that he had also lived in the home, had been exposed to similar levels of amphetamine and methamphetamine.

The Findings and Recommendations issued on February 24 stated that the permanency goal regarding the Child at that time was reunification. However, the trial court noted the pending motion requesting a finding that a severe act of physical abuse had occurred and seeking relief from the requirement to make reasonable efforts toward reunification. The trial court further noted that the Juvenile Officer made a similar oral request at the disposition hearing. The trial court granted Mother the opportunity to file a response to the motion, which she did on February 26. On March 17, the trial court issued new Findings and Recommendations

---

4. "The statutes and rules covering juvenile proceedings 'provide for bifurcated hearings to dispose of any petition alleging that a minor is in need of care and treatment by the court. These hearings are identified as an adjudication hearing and a dispositional hearing.'" *In re F.R.D.*, 481 S.W.3d 32, 34 n. 2 (Mo. App. W.D. 2015) (quoting *In re K.S.W.*, 454 S.W.3d 422, 426 (Mo. App. W.D. 2015)). The adjudication hearing "concerns only whether the Juvenile Officer established the necessity of the court to assume jurisdiction over the child." *In re K.S.W.*, 454 S.W.3d at 426. Should the trial court at the adjudication hearing determine that assuming jurisdiction is warranted, the court then moves to the dispositional phase. *Id.* "In that second hearing, the juvenile court must conduct a separate hearing to determine what disposition, if any, (i.e., placement, treatment, and care) the court should order as being in the best interest of the child." *Id.*

wherein it concluded that the evidence adduced supported a finding that Mother had murdered the Child's brother, thus relieving the Juvenile Officer of his duty to make reasonable efforts toward reunification under section 211.183.7(2)(a), and declared that the permanency goal for the Child would be termination of parental rights followed by adoption.

On June 28, 2016, the Juvenile Officer filed a petition to terminate Mother's parental rights, which proceeded to hearing on November 8, 2016. During the hearing, at the request of the Juvenile Officer, the trial court took judicial notice of its file from the jurisdictional proceeding. The Juvenile Officer also presented testimony from the case manager assigned to the case pertaining to Mother's actions following the jurisdictional proceeding. Specifically, the case manager testified that Mother had failed to provide support for the Child despite being informed of her obligation to do so. The case manager further testified that the Child had undergone testing for drug exposure, which confirmed that he had been exposed to methamphetamine as well as marijuana. In addition, numerous additional exhibits, including correspondence between Mother and the case manager, medical records pertaining to the Child's brother, and records from Mother's criminal case relating to the shooting, were admitted into evidence. After considering the evidence presented, the trial court entered its judgment terminating Mother's parental rights. Mother now appeals.

## Standard of Review

Section 211.477.6 establishes the two factors that must be found in order to terminate parental rights. First, the trial court must find "clear, cogent and convincing evidence that [statutory] grounds exist for termination." § 211.447.6; *In re E.B.R.,* 503 S.W.3d 277, 280 (Mo. App. W.D. 2016). Evidence is considered clear, cogent and convincing if it "instantly tilts the scales in favor of termination when weighed against the evidence in opposition and the finder of fact is left with the abiding conviction that the evidence is true." *In re E.B.R.,* 503 S.W.3d at 281 (quoting *In re K.A.W.,* 133 S.W.3d 1, 12 (Mo. banc 2004)). However, "a trial court cannot support a termination by *merely* incorporating earlier findings supporting its assumption of jurisdiction or some other earlier disposition." *In re K.A.W.,* 133 S.W.3d at 10 (emphasis added). Therefore, in determining whether the evidence presented demonstrates grounds for termination, the trial court must look forward in time and seek to determine "whether the past acts [of a parent] provide an indication of the likelihood of future harm." *Id.* Should the trial court conclude that grounds for termination do exist, the court must next address whether termination is in the best interest of the child. *In re E.B.R.,* 503 S.W.3d 277 at 281.

When reviewing a judgment terminating parental rights, we will affirm "unless the 'record contains no substantial evidence to support the decision, the decision is against the weight of the evidence, or the trial court erroneously declares or applies the law.'" *In re S.M.H.,* 160 S.W.3d 355, 362 (Mo. banc 2005) (quoting *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976)). "As a practical matter, this means the judgment will be reversed 'only if we are left with the firm belief that the order was wrong.'" *Id.* (quoting *In re T.G.,* 965 S.W.2d 326, 332 (Mo. App. W.D. 1998)). Further, because one ground for terminating parental rights alone is sufficient, we will uphold a judgment to terminate based on multiple grounds provided any of the grounds relied upon by the trial court are proven. *In re A.C.G.,* 499 S.W.3d

340, 347 (Mo. App. W.D. 2016); *In re J.S.*, 477 S.W.3d 719, 723 (Mo. App. W.D. 2015). We defer to the trial court's judgment regarding the issue of credibility and view the evidence in a light most favorable to the judgment. *In re S.M.H.*, 160 S.W.3d at 362.

## Discussion

■ Mother's first point on appeal alleges that the trial court violated her due process rights during the termination hearing by taking judicial notice of its file from the underlying jurisdictional proceeding. She argues that the nature and objective of the jurisdictional proceeding differed from that of the termination hearing and that at the time of the jurisdictional proceeding she was unaware that the Juvenile Officer would seek to later terminate her parental rights. She therefore contends that the trial court's action in taking judicial notice of its findings from the jurisdictional proceeding deprived her of the ability to adequately defend herself at the termination hearing. This argument is without merit.

Mother's position has been previously considered and rejected by this Court. *See In re C.M.W.*, 813 S.W.2d 331 (Mo. App. W.D. 1991). In the case of *In re C.M.W.*, the trial court took judicial notice of and relied upon findings from a prior jurisdictional proceeding involving the same child as well as the legal files relating to a prior jurisdictional proceeding and termination hearing regarding that child's sibling. *Id.* at 333. This Court affirmed the trial court, noting that the parent had been represented by counsel in each of the three prior proceedings and had been given "every opportunity to refute, impeach or explain the evidence against her" during those adjudications. *Id.*; *see also In re A.A.T.N.*, 181 S.W.3d 161, 168 (Mo. App. E.D. 2005) (trial court in termination of parental rights proceeding did not err in taking judicial notice of its prior case files regarding the child in question and her sibling (citing *In re C.M.W.*, 813 S.W.2d 331)); *In re A.C.G.*, 499 S.W.3d 340, 346 (Mo. App. W.D. 2016)("[A] court may take judicial notice of its own records in prior proceedings that are between the same parties and are concerned with the same basic facts involving the same general claims for relief. . . .").[5]

■ Here, as with *In re C.M.W.*, Mother was represented by counsel throughout the prior jurisdictional proceeding and was given a full and fair opportunity to refute, impeach, or explain the evidence presented at that hearing.[6] Further, it is clear that

---

**5.** We also note the case of *In re J.M.N.*, 134 S.W.3d 58 (Mo. App. W.D. 2004). *In re J.M.N.* also involved a trial court taking judicial notice of its findings from a prior jurisdictional proceeding involving the same child. *Id.* at 67-68. The trial court relied on the judicially noticed findings and did not hear any evidence at the termination hearing relating to the acts of abuse that were alleged in the Juvenile Officer's petition. *Id.* On appeal, this Court did not find the trial court erred in either taking judicial notice of its file from the jurisdictional proceeding or in relying on that file to establish evidence of abuse. *Id.* However, we did find that the trial court erred in relying *exclusively* on the findings from the jurisdictional proceeding without considering evidence presented at the time of the termination hearing that showed the parent had made great efforts to correct her behavior and improve her parenting. Unlike the trial court in *In re J.M.N.*, the trial court in the present case *did* consider the evidence presented at the time of the termination hearing and found no similar efforts were made by Mother, as we discuss in detail in our analysis of the second point on appeal.

**6.** Mother raises no argument and alleges no error relating to the jurisdictional proceeding to suggest that she was deprived of the ability to fully confront the evidence presented by the Juvenile Officer. In addition, Mother has failed to provide this Court with a copy of the

Mother aggressively contested the allegations during the jurisdictional proceeding as the record before us establishes she took the stand and claimed that another shooter was responsible for the death of the Child's brother.[7] Finally, Mother's argument that she was without notice of the Juvenile Officer's intention to pursue termination of her parental rights at the time of the jurisdictional proceeding is inconsistent with the record which reveals that the Juvenile Officer filed a motion prior to the disposition hearing requesting a finding that Mother had committed a "severe act of physical abuse" and asking to be relieved of the requirement to make reasonable efforts to promote reunification.

Mother neither acknowledges nor addresses *In re C.M.W.* and its sibling cases, and we can find no reason to distinguish those cases from the present one. Accordingly, we find the trial court did not err in taking judicial notice of and relying upon its findings from the jurisdictional proceeding during the termination hearing. Mother's first point is denied.

■■■ Mother's second point on appeal challenges the sufficiency of the evidence supporting termination.[8] Specifically, Mother maintains that the trial court's decision to terminate parental rights was based solely on the events of the day of the shooting but that the trial court heard no evidence regarding the shooting. She thus concludes that the trial court's findings are, on their face, against the weight of the evidence. This argument must fail for two distinct reasons. First, while it is true that the trial court heard no *testimony* regarding the shooting at the termination hearing, it was presented with *evidence* in the form of its own findings from the jurisdictional proceeding, which it took judicial notice of at the termination hearing. Second, the trial court's decision to terminate parental rights was not based solely on the day of the shooting but instead was based on events that occurred both before and after the day of the shooting.

---

transcript of the jurisdictional proceeding. We note that the appellant has the duty to prepare a legal file so that the record contains all evidence necessary to make determinations on the issues raised. *Bank of New York Mellon Trust Company, N.A. v. Jackson*, 484 S.W.3d 814 (Mo. App. W.D. 2015). "When a party fails to provide this court with … [a] transcript, we assume that [it] does not aid her appeal." *Young v. Pitts*, 335 S.W.3d 47, 67 n. 15 (Mo. App. W.D. 2011).

7. We note that, while Mother obdurately claims that she would have drastically altered her decisions regarding her defense during the jurisdictional proceeding had she been on notice that the Juvenile Officer would later seek to terminate her parental rights, she identifies no theory she would have altered, no evidence she would have presented, and no issues she would have pursued differently.

8. Missouri Supreme Court Rule 84.04(e) requires that an appellant's point relied on be repeated at the beginning of the section of the argument discussing that point. Yet, the argument section of Mother's brief regarding her second point states the point in a manner that is markedly different from how it is laid out in her point relied on section. Specifically, in the point relied on section, her second point alleges that the trial court erred in terminating her parental rights because it did not hear evidence regarding the events of September 5, 2015, thus violating her due process rights in that the trial court's findings were based solely on the events of that single day. However, her argument section alleges that the trial court erred in concluding that termination of the parent-child relationship was justified because it was against the weight of the evidence in that no witness testified regarding the events of September 5, 2015, even though the trial court's findings were based on events of that morning. Nevertheless, we will endeavor to reach the merits of Mother's second point relied on, which, based on the context of the argument, we construe to challenge the sufficiency of the evidence supporting termination.

Mother's erroneous assertion that the trial court based its decision to terminate parental rights solely on the events of September 5, 2015, would seem to be founded on the fact that the trial court relied on the shooting itself to demonstrate a "severe act of abuse" necessary to establish grounds for terminating parental rights under section 211.447.5(2)(c). However, the trial court did not rely on section 211.447.5(2)(c) alone in terminating Mother's parental rights. On the contrary, the trial court's decision to terminate was based on three independent grounds: section 211.447.5(2)(c), section 211.447.5(2)(d), and section 211.447.5(6)(a). These two other grounds upon which the trial court relied were significantly more concerned with events before and after the shooting.

Section 211.447.5(2)(d) permits the termination of parental rights if the court finds a "[r]epeated or continuous failure by the parent, although physically or financially able, to provide the child with adequate food, clothing, shelter, or education as defined by law, or other care and control necessary for the child's physical, mental, or emotional health and development." The trial court found that Mother had failed to provide the Child with adequate and safe living conditions sufficient to warrant termination of parental rights based on circumstances that were present prior to the events of September 5, 2015. In particular, the trial court noted that when law enforcement entered the family residence in response to the shooting, they discovered the home to be both unsafe and unsanitary, with weapons, ammunition, il-

legal substances such as methamphetamine, and drug paraphernalia scattered throughout the house, including where the children slept. The officers had described the home as being generally filthy with trash in one room rising to waist height. The trial court further noted that photographic evidence presented in the jurisdictional proceeding showed that the home lacked basic structural necessities such as appropriate flooring. Finally, testimony given at the termination hearing demonstrated that both the Child and the Child's deceased brother had been exposed to illegal drugs. Testing performed on the liver of the Child's brother indicated a chronic exposure to amphetamine and methamphetamine while a hair test performed on the Child showed high levels of methamphetamine and marijuana.

Based on the evidence presented at the termination hearing regarding the Child's living conditions prior to the shooting, which included both facts from its Findings and Recommendations issued following the jurisdictional proceeding and judicially noticed during the termination hearing as well as testimony provided at the termination hearing itself, the trial court concluded that grounds for termination existed based on section 211.447.5(2)(d). Moreover, the trial court specifically found that Mother had failed to demonstrate that, should reunification occur, she would be able to provide for the Child's physical, mental, and emotional needs for the foreseeable future.[9]

The trial court did not stop there however; it also found that Mother's actions after

9. We have previously held that a trial court may predict future conduct based on past behavior showing an "inability or unwillingness to effectively parent" coupled with the lack of evidence of the likelihood or ability to correct that behavior in the future. *In re T.M.E.*, 169 S.W.3d 581, 588–89 (Mo. App. W.D. 2005); *In re B.J.H., Jr.*, 356 S.W.3d 816, 830 (Mo. App. W.D. 2012). "Because 'it is difficult to predict future harm, to ask anything more of the trial court would be asking it to predict the future with a near impossible degree of certainty.' " *In re B.J.H., Jr.*, 356 S.W.3d at 830 (quoting *In re B.H.*, 348 S.W.3d 770, 777 (Mo. banc 2011)).

the court took jurisdiction over the Child further demonstrated an unwillingness to provide for the Child. At the termination hearing, the case manager testified that, despite being sent "Incarcerated Parent" letters, Mother had made no attempt since her incarceration to provide financial support for the Child or to ensure that the Child was being adequately cared for.[10] This included failing to send the Child any food, toys, gifts or other comforts, though she did send the Child several cards. The case manager also testified there was no indication that Mother would be able to provide the Child with a permanent stable home for the foreseeable future. She therefore asserted that termination of Mother's parental rights would be in the Child's best interest. This position was reiterated in the closing argument of the Child's court appointed guardian *ad litem.*

We have previously found that grounds for termination of parental rights exist where incarcerated parents fail to meet their obligations to provide support for their children:

> [T]he substantially reduced wages received by incarcerated parents do not excuse their obligation under § 211.447 to make monetary contributions towards support of their children. Granted, such a contribution from an incarcerated parent will not significantly assist in providing the parent's child with essentials, but even a minimal contribution evinces the parent's intent to continue the parent-child relationship. Evidence of this intent, a central consideration in the court's determination, is lacking when, such as here, the parent fails to make any contribution, no matter how diminutive the amount.

*In re M.L.K.,* 804 S.W.2d 398, 402 (Mo. App. W.D. 1991) (internal citations omitted); *see also In re M.J.H.,* 398 S.W.3d 550, 562 (Mo. App. S.D. 2013) ("Father may not rely upon his incarceration as a reason for failing to contribute any money toward the children's support because incarceration does not discharge Father's obligations to the children."). In this case, Mother's failure to support the Child following her incarceration is merely a continuation of the apathy demonstrated by her prior to the day of the shooting. The evidence presented regarding Mother's parenting both before and after the events of September 5, 2015, coupled with the testimony of the case manager and findings by the trial court that there was no evidence that her behavior and approach to parenting would change, is sufficient to support the trial court's decision to terminate her parental rights based on section 211.447.5(2)(d). Because only a single statutory ground is necessary to terminate a parent's rights, we need not address the remaining grounds relied upon by the trial court. *In re A.C.G.,* 499 S.W.3d 340, 347 (Mo. App. W.D. 2016). Mother's second point is denied.

### Conclusion

The judgment of the trial court is affirmed.

All concur.

---

10.  As explained by the case manager, "Incarcerated Parent" letters are sent to incarcerated parents to inform them of their rights and responsibilities toward supporting their children and that those responsibilities continue even though they are incarcerated.